GUILLERMO COTTO GUADALUPE, demandante y peticionario, *v.* DEPARTAMENTO DE EDUCACIÓN (JUNTA DE TRANSPORTACIÓN Y SUB. ESCOLARES DISTRITO ESCOLAR DE GUAYNABO y JUNTA DE REVISIÓN), demandados y recurridos.

*Número:* CE-94-887          *Resuelto:* 15 de junio de 1995

*Jorge Márquez Gómez*, abogado del peticionario; *Carlos Lugo Fiol, Procurador General Interino*, y *Edgardo Rodríguez Quilichini, Procurador General Auxiliar*, abogados del recurrido.

El Juez Asociado Señor Fuster Berlingeri emitió la opinión del Tribunal.

Tenemos la ocasión de interpretar por primera vez la Sec. 3.19 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2169, y de formular algunos pronunciamientos sobre su sentido y propósito.

I

En respuesta a una invitación cursada por el Departamento de Educación, el peticionario compareció como lici-

tador a una subasta de servicios de transportación escolar celebrada el 25 de agosto de 1992. Ese día presentó los documentos que, según el peticionario, eran necesarios para ser elegible como licitador, conforme a lo requerido por el Reglamento para la Transportación de Escolares del Departamento de Educación, aprobado el 7 de diciembre de 1989.

Los documentos sometidos por el peticionario fueron examinados en la misma fecha por la representante de la Comisión de Servicio Público ante la Junta de Subastas del Distrito Escolar (en adelante Junta de Subastas). Esta persona determinó alegadamente que el peticionario cumplía con todos los requisitos pertinentes y que cualificaba para participar en la subasta.

Más tarde, ese día, se procedió a leer todas las licitaciones presentadas, y *el peticionario resultó ser el postor más bajo*. No obstante, la presidenta de la Junta de Subastas descalificó al peticionario. Adujo que éste carecía del permiso correspondiente de la Comisión de Servicio Público. Concluidos los procedimientos de ese día, la presidenta de la Junta de Subastas ordenó que se le devolviera al peticionario los documentos relacionados con su licitación, la cual no fue considerada. Días más tarde, el 2 de septiembre de 1994, la Junta de Subastas adjudicó la subasta en cuestión a postores que licitaron precios más altos que los presentados por el peticionario. A éste no se le notificó de la referida adjudicación ni de decisión escrita alguna.

Enterado el peticionario de su descalificación, el 9 de septiembre solicitó una reconsideración ante la Junta de Revisión de Subastas del Departamento de Educación. Adujo ante dicha Junta: que su licitación había sido previamente aprobada, precisamente por la representante de la Comisión de Servicio Público ante la Junta de Subastas; que él había sometido los permisos necesarios expedidos por la Comisión de Servicio Público, y que evidentemente la presidenta de la Junta de Subastas había cometido un

error al descalificar su licitación, por supuestamente carecer de la autorización necesaria de la Comisión de Servicio Público.

La Junta de Revisión de Subastas denegó la reconsideración referida. En vista de ello, el peticionario acudió, oportunamente, en revisión judicial ante el Tribunal Superior, Sala de San Juan. Dicho foro denegó la revisión por una supuesta falta de jurisdicción. Resolvió que el término de diez (10) días que provee la Ley de Procedimiento Administrativo Uniforme para solicitar la reconsideración administrativa en cuestión, comenzó a transcurrir el 25 de agosto de 1994, día cuando el peticionario fue descalificado, y no el 2 de septiembre cuando se adjudicó la subasta. Por lo tanto, según el foro a quo, la reconsideración administrativa presentada el 9 de septiembre fue tardía, lo que privaba al tribunal de jurisdicción para atender la revisión de la denegatoria de dicha reconsideración.

Inconforme, el peticionario acudió oportunamente ante nos. Alegó, en esencia, que el Tribunal Superior había errado al resolver que carecía de jurisdicción para revisar la resolución de la Junta de Revisión de Subastas del Departamento de Educación. El 24 de febrero de 1995 le concedimos un término a la parte recurrida para que mostrara causa por la cual no se debía expedir el auto solicitado y revocar la sentencia del Tribunal Superior.

Luego de una prórroga, la parte recurrida compareció el 28 de abril de 1995, representada por el Procurador General. Pasamos a resolver, según intimado.

II

La Sec. 3.19 de la Ley de Procedimientos Administrativos Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), *supra*, que rige los procedimientos de adjudicación de subastas, en lo pertinente, dispone lo siguiente sobre el término para solicitar reconsideración:

> La parte adversamente afectada por una decisión podrá, dentro del término de diez (10) días *a partir de la adjudicación de la subasta*, presentar una moción de reconsideración ante ... la entidad apelativa de subastas. (Énfasis suplido.)

■ Como puede observarse, dicha disposición expresamente señala que el término en cuestión comenzará *a partir de la adjudicación de la subasta*. No dice que comenzará a transcurrir desde que se emitió la decisión adversa, como erróneamente interpretó el foro a quo. Cuando la ley es clara, como lo es aquí, su letra debe observarse con rigurosidad. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966); *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743 (1952). Ello es así, particularmente cuando la disposición en cuestión no sólo está libre de toda ambigüedad, sino que además tiene un claro sentido jurídico, como sucede con la disposición de la L.P.A.U. antes citada. Dicha disposición permite adjudicar la reconsideración —y luego la revisión judicial— de la manera más favorable al proceso decisional, con un *cuadro completo* del caso en cuestión. La evaluación de la decisión impugnada se realiza entonces con conocimiento de todos los detalles pertinentes de la adjudicación de la subasta, para así poder comparar los méritos de la licitación rechazada con los de la licitación ganadora. Su clara lógica jurídica explica por qué el legislador dispuso que el término comenzará a transcurrir a partir de la adjudicación de la subasta y no a partir del momento cuando se tomó la decisión adversa a uno de los licitadores.

■ Nuestra interpretación del texto de la referida Sec. 3.19 de la L.P.A.U. está avalada, además, por su historial legislativo. Dicha disposición fue añadida a la L.P.A.U. el 5 de agosto de 1989 mediante la Ley Núm. 43 de esa fecha, 3 L.P.R.A. secs. 2105, 2128, 3133, 3135–3136, 2165, 2169, 2172 y 2177. Al aprobar esta enmienda, el legislador buscaba asegurar que los procedimientos de adju-

dicación de subastas en las agencias fuesen de naturaleza *informal*, sin que las partes pudiesen requerir que se convirtiesen en procedimientos formales y que las normas y *términos* de tales procedimientos informales se estableciesen por reglamentación de la propia agencia que celebraba las subastas. Véase el Informe de la Comisión de lo Jurídico del Senado sobre el P. de la C. 232 de 25 de junio de 1989, 11ma Asamblea Legislativa, 1ra Sesión Ordinaria. Sin embargo, el propio legislador hizo dos excepciones al propósito de informalidad antes reseñado: una relativa a la reconsideración y la otra a la revisión judicial. Respecto a estos dos asuntos de particular importancia, el propio legislador decidió fijar los términos correspondientes. En el Informe de la Comisión de la Jurídico del Senado, *supra*, pág. 6, sobre el particular, se indicó lo siguiente:

> Con las enmiendas relativas a las subastas se pretende simplificar los procedimientos adjudicativos de subastas, de forma que *sólo se consideren procedimiento[s] formales, la reconsideración y la revisión judicial*, obviándose los requisitos del Capítulo III de la Ley 170 en todo el proceso anterior a la reconsideración, y *limitándose los procesos formales a la propia moción de reconsideración*, sin que se provea para descubrimiento de prueba u otros procedimientos por ley, dejando a las agencias disponer por reglamento todo lo relativo al proceso de subasta. (Énfasis suplido.)

De esta forma, el legislador aseguraba que el término para solicitar la reconsideración y la fecha cuando comenzaría a transcurrir quedasen fijos por ley, no sujetos a la discreción de los funcionarios de la agencia. Así lo entendieron quienes redactaron la reglamentación relativa a las subastas del Departamento de Educación. En el Art. IX, Sec. II, inciso (15) del Reglamento para la Transportación de Escolares Núm. 4064 del Departamento de Educación, 7 de diciembre de 1989, pág. 19, se copia y repite literalmente lo dispuesto en la Sec. 3.19 de la L.P.A.U., *supra*, al disponerse que cualquier licitador adversamente afectado "podrá ..., dentro del término de diez (10) días *a partir de la*

*adjudicación de la subasta*, presentar una moción de reconsideración ante la Junta de Revisión". (Énfasis suplido.)

En el caso ante nos ahora, el peticionario hizo precisamente lo que establecen las referidas disposiciones de la L.P.A.U. y del Reglamento de Subastas del Departamento. Dentro del término de diez (10) días, contados a partir de la fecha en que la Junta de Subastas en sí adjudicó la subasta en cuestión, sometió su reconsideración ante la Junta de Revisión de Subastas. Lo hizo a tiempo, *como el propio Procurador General admite en su escrito*, en cumplimiento de nuestra orden de mostrar causa. Erró, pues, el Tribunal a quo al resolver como lo hizo.

### III

La decisión del Tribunal Superior es errónea por una segunda razón. La acción de la presidenta de la Junta de Subastas de descalificar al peticionario el 25 de agosto de 1994, no es —de modo alguno— una decisión administrativa que active el término jurisdiccional de la reconsideración. No fue una decisión de la Junta de Subastas propiamente, ya que ésta no se reunió ni emitió voto alguno el 25 de agosto.

El Reglamento para la Transportación de Escolares, *supra*, pág. 16, dispone en su Art. IX, Sec. I(F)(5), que la Junta de Subastas, *como cuerpo colegiado*, "[d]ecidirá la acción a tomar a tono con este Reglamento en los casos de licitadores que no cumplan con los términos de la subasta y atenderá cualquier tipo de problema relacionado con los licitadores y los servicios objeto de la subasta". Como puede observarse, la decisión de descalificar al peticionario, si éste no cumplía con los términos de la subasta sobre los permisos de la Comisión de Servicio Público, le correspondía a la Junta de Subastas en sí, y no a la presidenta de dicha Junta, como sucedió en este caso. Así lo admite el

propio Procurador General en su escrito ante nos. La presidenta de la Junta, pues, actuó *ultra vires* y su decisión no era propiamente de la agencia, por lo que el término de la L.P.A.U. para solicitar la reconsideración administrativa no podía comenzar a transcurrir a partir de tal decisión.

■ Ya antes hemos advertido que una agencia administrativa está obligada a observar estrictamente sus propios reglamentos, y cuando no lo hace, no comienza a transcurrir el término para apelar. *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978). Por razones análogas a las discutidas allí y la Sec. 3.19 de la L.P.A.U., *supra*, que consideramos aquí, debe ser interpretada en el sentido de que el término de reconsideración que ésta establece para casos de subastas, no comienza a decursar si la decisión en cuestión no fue tomada conforme al reglamento aplicable.

## IV

■ Finalmente, debe notarse que la decisión de la presidenta de la Junta de Subastas no fue notificada por escrito, por correo certificado, a la parte afectada. Además, no hubo ningún aviso a la parte afectada para advertir de su derecho a solicitar la reconsideración, y luego a revisión judicial, ni de los términos que tenía para ello. La decisión aludida de la presidenta no cumplió de modo alguno con los requisitos legales necesarios, según los fijan tanto la Sec. 3.16 de la L.P.A.U., *supra*, como nuestra jurisprudencia. *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 264 (1987); *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992). Por estas otras razones, tampoco podía servir tal decisión de la presidenta como punto de partida para que comenzara a transcurrir el término jurisdiccional. *García v. Adm. del Derecho al Trabajo*, supra.

En resumen, el tribunal a quo tenía jurisdicción para atender la solicitud del peticionario y revisar una actua-

ción administrativa que, de ser ciertos los hechos alegados, era contraria a los principios elementales del debido proceso de ley y causaba una injusticia al peticionario. Los tribunales del país tienen el deber de examinar con cuidado casos como el de autos en los cuales puede, además, estar adversamente afectado el erario y menoscabado el esquema de ley que persigue asegurar la integridad de las subastas públicas. Particularmente en estos tiempos aciagos, cuando la colectividad vive justamente alarmada por el manejo indebido de los fondos públicos, le corresponde a la Rama Judicial velar por el fiel cumplimiento de la ley.

Por los fundamentos expuestos, *se dictará sentencia para expedir el auto solicitado, revocar la sentencia del Tribunal Superior, Sala de San Juan, y devolver el caso para que continúen los procedimientos conforme lo aquí resuelto.*

El Juez Asociado Señor Rebollo López emitió una opinión de conformidad.

## — O —

Opinión de conformidad emitida por el Juez Asociado Señor Rebollo López.

Como expresáramos el 24 de octubre de 1994,[1] este Tribunal tiene una pesada carga de trabajo, la cual se hace aún más pesada y difícil de manejar "por las actuaciones, en ocasiones, incomprensibles de algunos de los jueces del ... Tribunal de Primera Instancia".

No hay duda —así lo expresamos entonces y lo *reiteramos* en el día de hoy— *del hecho de que la inmensa mayoría de los jueces de instancia siempre actúan conforme a derecho, al sentido común y a la lógica.* Si en el presente

---

[1] En la Opinión de conformidad que emitiéramos en *Pueblo v. Torres Rodríguez,* 137 D.P.R. 312 (1994).

caso así se hubiera actuado a nivel de instancia, *nadie hubiera tenido que perder precioso tiempo*; esto es, *no* hubiera sido necesario que la parte demandante peticionaria hubiera tenido que radicar un recurso ante este Tribunal, *ni* los miembros de este Foro hubieran tenido que examinar y estudiar el mismo, *ni* el Procurador General hubiera tenido que comparecer *allanándose* a la orden de mostrar causa emitida, *como tampoco* se hubiera tenido que emitir ponencia alguna por este Tribunal. Por otro lado, de haberse actuado correctamente a nivel de instancia, la controversia planteada posiblemente ya estaría resuelta.

La determinación del tribunal de instancia a los efectos de que carecía de jurisdicción para entender en el recurso de revisión administrativo que ante dicho foro radicó la parte peticionaria es, *a todas luces y desde cualquier punto de vista,* una errónea. La misma *únicamente* puede haber sido el producto de *falta de atención y estudio suficiente* de parte del juez de instancia. Como expresáramos el pasado 24 de octubre de 1994:

> Todos debemos hacer un esfuerzo por acelerar el trámite judicial; *ello con el propósito de que la ciudadanía de este País sea la beneficiaria de decisiones judiciales correctas y rápidas.* Determinaciones o decisiones como la que aquí hemos revisado ciertamente no ayudan a la consecución de ese objetivo. (Énfasis en el original.) *Pueblo v. Torres Rodríguez*, 137 D.P.R. 312, 316 (1994), opinión de conformidad.