CC-2001-583                                              1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>      Recurrido | Certiorari |
| v. | 2002 TSPR 57 |
| Eduardo Rodríguez Cabrera<br>   Peticionario | 156 DPR _____ |

Número del Caso: CC-2001-583

Fecha: 7/mayo/2002

Tribunal de Circuito de Apelaciones:
                        Circuito Regional IV

Juez Ponente:
                        Hon. Jocelyn López Vilanova

Oficina del Procurador General:
                        Lcda. Iris M. Barreto Saavedra
                        Procuradora General Auxiliar

Abogados de la Parte Peticionaria:
                        Lcdo. José D. Soler Fernández
                        Lcda. Carmen Ana Rodríguez Maldonado

Materia: Art. 171 del C.P.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

**El Pueblo de Puerto Rico**

    **Recurrido**

         **v.**           **CC-2001-583**    **Certiorari**

**Eduardo Rodríguez Cabrera**

    **Peticionario**

**Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton**

San Juan, Puerto Rico, a 7 de mayo de 2002.

Nos corresponde examinar la figura de la reincidencia habitual, Artículo 61 del Código Penal, 33 L.P.R.A. sec. 3301, para determinar si la misma se configura cuando los dos (2) delitos graves que sirven de base a ésta son producto de sentencias emitidas el mismo día. Por entender que para propósitos de la reincidencia habitual el criterio rector es que los delitos bases se hayan cometido en tiempos diversos e independientes unos de otros, sin que se requiera, además, que las sentencias hayan sido dictadas en fechas diferentes, confirmamos.

I

El Ministerio Público presentó siete (7) acusaciones contra Eduardo Rodríguez Cabrera (en adelante, el acusado) por escalamiento agravado, Artículo 171 del Código Penal, 33 L.P.R.A. sec. 4277. Además, alegó que el acusado era reincidente habitual porque anteriormente había sido convicto y sentenciado por dos (2) delitos graves cometidos en tiempos diversos e independientes uno de otro. En específico, el Ministerio Público se refería a dos (2) delitos graves (escalamiento agravado) cometidos por el acusado el 27 de marzo de 1996 y el 29 de marzo de 1996, respectivamente, los cuales no estaban relacionados entre si. Dichos casos se procesaron separadamente pero posteriormente se consolidaron para que el acusado hiciera alegación de culpabilidad en ambos cargos, emitiéndose dos (2) sentencias el mismo día en las que se le condenó a cumplir ocho (8) años en cada uno de los casos.

Oportunamente, la Defensa se opuso a la alegación de reincidencia habitual aduciendo que ésta no procedía pues las dos (2) sentencias que servían de base para dicha alegación se emitieron el mismo día. Así, alegó que cuando el Artículo 61 del Código Penal dispone "[h]abrá reincidencia habitual cuando el que ha sido convicto y sentenciado por dos o más delitos graves **cometidos en tiempos diversos e independientes unos de otros**"[1] debe entenderse que se exige, no sólo que los delitos bases sean "cometidos en tiempos diversos e independientes", sino que las sentencias también sean dictadas en "tiempos diversos e independientes"; esto es, que es necesario haber sido convicto y sentenciado en fechas distintas.

Por su parte, el Ministerio Público se opuso tras argumentar que para propósitos de la reincidencia habitual lo importante es la comisión de dos (2) delitos graves en tiempos distintos e independientes sin que sea determinante la fecha en que se dicten las sentencias. De esta manera, aclaró que la coincidencia en la fecha de las sentencias obedeció a la necesidad de evitar múltiples procedimientos y dilaciones innecesarias, sobre todo en vista que el acusado pretendía declararse culpable en ambos casos. Además, señaló que si el argumento de la defensa prosperaba, entonces

ahora el acusado debía enfrentar siete (7) procedimientos independientes, aunque pretendiera en cada uno de ellos hacer una alegación preacordada, para así evitar en el futuro la misma controversia que hoy se plantea.

Luego del examen de rigor, el Tribunal de Primera Instancia acogió el razonamiento presentado por la defensa y denegó la alegación de reincidencia habitual tras concluir que dicha alegación no procede cuando los delitos bases son producto de sentencias emitidas el mismo día. De este dictamen el Ministerio Público acudió al Tribunal de Circuito de Apelaciones, quien revocó al señalar que para propósitos de la reincidencia habitual lo determinante es que los delitos bases sean cometidos en tiempos diversos e independientes unos de otros sin que sea relevante la fecha en que se dictaron las sentencias.

Inconforme, el acusado acude ante nos cuestionando el dictamen del foro apelativo. Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

II

En Pueblo v. Reyes Moran, 123 D.P.R. 786 (1989), tuvimos la oportunidad de expresarnos sobre la temática que nos concierne. En dicha ocasión reconocimos que prácticamente todos los estados de Estados Unidos y el gobierno federal tienen legislaciones sobre delincuencia habitual dentro de su cuerpo de normas jurídicas. Igualmente, advertimos que los criterios para definir un delincuente habitual y la penalidad que le habrá de ser impuesta son asuntos que competen a las jurisdicciones estatales. Por ello, afirmamos que la Legislatura de Puerto Rico tiene amplia facultad para crear delitos e imponer castigos en ausencia de limitaciones constitucionales. De igual forma, aclaramos que la Asamblea Legislativa puede imponer a los delincuentes habituales una penalidad mayor dentro de la autoridad que constitucionalmente le asiste para imponer castigos. Pueblo v. Reyes Moran, *supra* a las págs. 796-797.

A estos efectos, mediante la Ley Núm. 34 del 31 de mayo de 1988 se enmendó el Artículo 61 del Código Penal, 33 L.P.R.A. sec. 3301, para disponer sobre

---

[1] 33 L.P.R.A. sec. 3301 (Énfasis suplido).

la figura de la reincidencia. A partir de dicha enmienda, el referido precepto dispone, en lo pertinente:

> [...]
> (1) Habrá reincidencia cuando el que ha sido convicto por delito grave incurre nuevamente en otro delito grave.
> (2) Habrá reincidencia agravada cuando el que ha sido convicto anteriormente por dos (2) o más delitos graves cometidos en tiempos diversos e independientes unos de otros incurre nuevamente en otro delito grave.
> (3) Habrá reincidencia habitual cuando el que **ha sido convicto y sentenciado por dos o más delitos graves cometidos en tiempos diversos e independientes unos de otros** cometiere posteriormente cualquiera de los siguientes delitos o sus tentativas: asesinato, robo, incesto, extorsión, violación, sodomía, actos lascivos o impúdicos cuando la víctima fuere menor de catorce (14) años, secuestro, agresión agravada en su modalidad grave, escalamiento agravado [...]. (Énfasis suplido).

**Como puede apreciarse, el citado artículo establece tres (3) tipos de reincidencia, a saber: reincidencia simple, reincidencia agravada y reincidencia habitual. Véase, Dora Nevares Muñiz, <u>Código Penal de Puerto Rico</u>, pág. 111 (2001). Es esta última la que aquí nos concierne y sobre la cual se ha desarrollado la controversia que nos ocupa. Veamos.**

**Por disposición expresa del Artículo 61, *supra*, la reincidencia habitual se configura cuando se comete cualquiera de los delitos mencionados en el precepto tras antes haber sido convicto y sentenciado por dos (2) o más delitos graves cometidos en tiempos diversos e independientes unos de otros. Así, dicha figura presupone unos delitos bases, los cuales han de haber sido cometidos "en tiempos diversos e independientes unos de otros". Por ello, lo determinante para propósitos de la reincidencia habitual es que dichos delitos bases sean producto de episodios criminales distintos y separados, sin que sea imprescindible que los mismos sean producto de sentencias emitidas en fechas distintas.**

**Ciertamente, puede ocurrir que al momento en que se alegue la reincidencia habitual existan dos (2) sentencias de fechas distintas, las cuales reflejen la comisión de dos (2) delitos graves cometidos en tiempos diversos e independientes unos de otros. Sin embargo, en tal caso lo decisivo no es la independencia y diversidad temporal de las sentencias, sino la de los delitos bases. No existe indicio alguno en el texto del**

Artículo 61, *supra*, que indique que las sentencias que recogen los delitos bases deben ser dictadas en fechas distintas. Por el contrario, lo que existe es un lenguaje claro que utiliza la independencia y diversidad temporal de los delitos bases como criterio rector para la imposición de la reincidencia habitual. El Articulo se refiere a dos (2) o más delitos graves "cometidos en tiempos diversos e independientes unos de otros" no a dos (2) o más sentencias dictadas en tiempos diversos e independientes.

Este énfasis en los delitos graves se desprende no sólo del texto del Artículo, sino del propio historial de la Ley Núm. 34, *supra*, la cual se conceptualizó para "aquellos delincuentes que han hecho de la [c]omisión reiterada de actos delictivos, su forma de vida".[2] Igualmente, del referido historial se desprende que la reincidencia se concibió como uno de los "mecanismos legales disponibles para poder penalizar con el mayor rigor la conducta delictiva de naturaleza grave y persistente[.]"[3]

No causa sorpresa que el énfasis sea, precisamente, en los delitos bases pues en otras jurisdicciones se ha formulado igual criterio rector para sus respectivas legislaciones. En la jurisdicción federal véase, por ejemplo, el "Armed Career Criminal Act", 18 U.S.C. § 924(e) (1988), el cual ha sido interpretado por los distintos circuitos federales como estableciendo dicho criterio. U.S. v. Rush, 840 F.2d 580, 581 (8vo Circ. 1988) ("it is the criminal episodes underlying the convictions, not the dates of conviction, that must be distinct to trigger the provisions of the [Armed Career Criminal Act]"); U.S. v. Herbert, 860 F.2d 620, 621 (5to Circ. 1988) ("two or more convictions arising from the same proceeding should be treated as separate convictions provided that they arose from separate transactions") refiriéndose a United States v. Greene, 810 F.2d 999 (11mo Cir. 1986) y United States v. Wicks, 833 F.2d 192, (9no Cir. 1987). Además, U.S. v. Herbert, a la pág. 622 ("we hold that where, as here, a defendant is convicted in a single judicial proceeding for multiple counts arising from separate distinct criminal transactions that those

---

[2] Véase, Informe de la Comisión de lo Jurídico sobre el Proyecto del Senado 1367, 11 de marzo de 1988, pág. 2.

convictions should be treated as multiple convictions under [the Armed Career Criminal Act]").

En fin, por virtud del Artículo 61 del Código Penal, *supra*, el énfasis recae en los delitos bases, mas no en la fecha en que se dicta la sentencia que los recoja.  Son estos delitos los que tienen que surgir como parte de un episodio criminal distinto y separado sin que se requiera, además, que las sentencias también sean distintas y separadas.  La sentencia y convicción es relevante sólo para demostrar que, en efecto, el acusado ha sido convicto y sentenciado por tales delitos.  Así se desprende, no sólo del texto legal, sino del historial legislativo el cual incluso afirma que "basta que exista una convicción por dos delitos graves para que la persona pueda ser declarada delincuente habitual".[4]

A la luz de esta normativa, pasemos a discutir la situación que tenemos ante nos.

### III

Como hemos señalado, en el caso de autos el acusado aduce que para propósitos de la reincidencia habitual se requiere que las sentencias que sirven de base para dicha alegación hayan sido dictadas en fechas distintas.  No le asiste la razón.  Nada en el texto de la ley impone tal exigencia.  Por el contrario, el Artículo 61, *supra*, sólo establece como requisito rector haber sido convicto y sentenciado por dos (2) o más delitos graves cometidos en tiempos diversos e independientes unos de otros, sin que se exija, además, que las sentencias sean dictadas en la misma fecha.

Mediante la Ley Núm. 34, *supra*, la cual enmendó el Artículo 61 del Código Penal, se quiso atender el problema de la criminalidad, enfatizando la responsabilidad del Estado para "penar con mayor severidad al convicto que recurre en la delincuencia".[5]  De esta manera, la Legislatura formuló la figura de la reincidencia habitual para aquellas personas que incurrieran en un tercer delito de los allí mencionados tras haber "sido

---

[3] *Id.*
[4] *Id.* a la pág. 11.

convicto[s] y sentenciado[s] por dos o más delitos graves cometidos en tiempos diversos e independientes unos de otros". El legislador estimó que quien incurre en un tercer delito de los allí establecidos, una vez se den las condiciones delimitadas por el Artículo (entre las que no se encuentra la emisión de sentencias en tiempos diversos), merece la sanción que acarrea la reincidencia habitual. Ya hemos dicho que la Asamblea Legislativa tiene amplia facultad para fijar las penas y las condiciones en que se impondrá una pena de reincidencia, siempre que lo haga de forma consistente con la Constitución. El acusado no demuestra adecuadamente qué violación constitucional se infringe al configurar la reincidencia habitual sin exigirse que las sentencias que sirven de base a ésta sean emitidas en fechas distintas. Aun cuando el acusado nos induce a adoptar una interpretación que imponga este requisito adicional, declinamos aceptar su invitación. Veamos.

La defensa sostiene que se debe poner atención a la fecha en que se dictan las sentencias pues dos (2) sentencias dictadas un mismo día forman parte de un sólo procedimiento. Esto, según el acusado, iría en contra del propósito de la figura de la reincidencia pues sólo le otorgaría una (1) oportunidad para rehabilitarse y no dos (2) como ocurriría si las sentencias se hubiesen dictado en fechas distintas. En otras palabras, el acusado pretende estar convicto y sentenciado por una primera ofensa antes de cometer la segunda, de suerte que al efectuar esta última ya haya tenido el beneficio de haber pasado por el sistema penal con la respectiva oportunidad para ser rehabilitado. Así, al cometer la tercera ofensa, la cual activaría la reincidencia habitual, el acusado habría tenido la oportunidad de pasar dos (2) veces por el sistema penal, con las correspondientes oportunidades rehabilitadoras. Por ello, concluye el acusado, en la medida que se permita que dos (2) sentencias dictadas el mismo día se consideren suficientes para configurar la reincidencia habitual, se le negaría la oportunidad para rehabilitarse por segunda ocasión.

---

[5] Véase, Exposición de Motivos de la Ley Núm. 34 del 31 de mayo de 1988.

El argumento de la defensa es ciertamente ingenioso pero, a la larga, carente de apoyo legal.  En primer lugar, debe quedar claro que el acusado si ha tenido oportunidad para rehabilitarse (pues éste ya había sido convicto y sentenciado por dos (2) delitos graves antes de enfrentar el proceso de autos).  Así visto, el caso de epígrafe meramente implica que la defensa difiere del número de veces por las que un acusado debe pasar por el sistema penal para que se pueda activar la reincidencia habitual. Sin embargo, mas allá de esta diversidad de criterio con el juicio de la Asamblea Legislativa, la defensa no esgrime razones meritorias para que descartemos el claro texto del Artículo 61, *supra*, e incorporemos al mismo su novedoso planteamiento.

De otra parte, del historial legislativo de la Ley Núm. 34, *supra*, se desprende que ni tan siquiera es necesario que la convicción del acusado culmine en su reclusión.[6]  Más aun, el Artículo 61, *supra*, descarta, de entrada, su razonamiento pues sólo impone como requisito la independencia y diversidad temporal de los delitos bases; esto es, de episodios criminales distintos y separados, sin exigirse, además, que las sentencias se emitan en fechas distintas.  Realmente, lo que pretende la defensa es que por fiat judicial añadamos una exigencia adicional al Artículo 61 del Código Penal, *supra*, (esto es, el requisito de diversidad temporal en las sentencias).  No obstante, estimamos improcedente imponer exigencias adicionales a un texto legal cuando las mismas no son compelidas por la Constitución.

Es un principio establecido de hermenéutica que cuando la letra de una ley es clara, la misma no debe ser menospreciada bajo el pretexto de cumplir con su espíritu.  Qume Caribe, Inc. v. Secretario de Hacienda, res. el 20 de marzo de 2001, 2001 TSPR 38; Calderón Morales v. Administración de Sistemas de Retiro, 129 D.P.R. 1020 (1992); Atlantic Pipe Corporation v. F.S.E., 132 D.P.R. 1026 (1993) y; Cotto Guadalupe v. Departamento de Educación, 138 D.P.R. 658 (1995).  Por ello, no

---

[6] Véase, Informe de la Comisión de lo Jurídico sobre el Proyecto del Senado 1367, 11 de marzo de 1988, pág. 11.

**desvirtuaremos el claro texto de un precepto en aras de acomodar cada teoría particular que formulen las partes ante nos.**

En fin, no procedía denegar la alegación de reincidencia habitual por el sólo hecho de que los delitos bases fueran producto de sentencias emitidas el mismo día. Por ende, procede confirmar el dictamen del tribunal apelativo. Se devuelve el recurso al Tribunal de Primera Instancia para que continúen los procedimientos conforme lo aquí resuelto.

**Se dictará la Sentencia correspondiente.**


**Federico Hernández Denton**
Juez Asociado

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**


**El Pueblo de Puerto Rico**

    **Recurrido**

    **v.**                            **CC-2001-583**       **Certiorari**

**Eduardo Rodríguez Cabrera**

    **Peticionario**


SENTENCIA


San Juan, Puerto Rico, a 7 de mayo de 2002.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integral de la presente, se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

    Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disintió sin opinión escrita.


                  Patricia Otón Olivieri
            Secretaria del Tribunal Supremo