Urgell Cuebas, Juez Ponente
*1083 TEXTO COMPLETO DE LA SENTENCIA
La recurrente, Tishman Realty Corporation (Tishman), solicita que revoquemos la determinación emitida por la Autoridad de Carreteras y Transportación (Autoridad de Carreteras) que declaró sin lugar la moción de reconsideración presentada por ésta impugnando la adjudicación de la Subasta Núm. 04-39 que hiciera la Junta de Subastas de la Autoridad de Carreteras a la desarrolladora Tres Ríos, Inc. (Tres Ríos).
El 11 de abril de 2002, la Autoridad de Carreteras emitió un requerimiento de cualificaciones para desarrolladores que quisieran ser considerados para cualquiera de las diez parcelas específicas de desarrollo conjunto del Tren Urbano. Una vez la Autoridad de Carreteras completó la evaluación de los Estados de Cualificaciones, sometió, el 17 de septiembre de 2002, una “Lista Cualificada de Desarrolladores” para cada parcela.
En febrero de 2004, la Autoridad de Carreteras decidió invitar desarrolladores adicionales para la parcela ubicada en la Estación Roosevelt y emitió un Estado Reabierto de Cualificaciones, lo que tuvo como consecuencia que tres equipos adicionales de desarrolladores se añadieran a la lista de desarrolladores cualificados. El 4 de mayo de 2004, la Autoridad de Carreteras emitió una invitación a someter propuestas para el desarrollo conjunto de la parcela A de la Estación Roosevelt. Las tres desarrolladoras que respondieron al llamado fueron Tishman, Tres Ríos y Mark B. Davis.
Luego de celebradas varias vistas y reuniones entre la Autoridad de Carreteras y los proponentes, según dispone el Reglamento de Subastas de la Autoridad de Carreteras, ésta determinó que las tres propuestas cumplían con los Límites Competitivos establecidos el 29 de octubre de 2004 y los tres proponentes fueron invitados a someter mejores ofertas que fuesen finales.
El 23 de diciembre de 2004, la Autoridad de Carreteras anunció su determinación de adjudicarle la Subasta a Tres Ríos por entender que su propuesta era la más ventajosa. El 3 de enero de 2004, Tishman solicitó reconsideración de la decisión de la Autoridad de Carreteras y solicitó examinar el expediente de Tres Ríos para así poder realizar una comparación entre su propuesta y la de ésta. Esta petición, al igual que la reconsideración, fueron declaradas sin lugar el 23 de diciembre de 2004.
No conforme, Tishman presentó la solicitud de revisión que aquí nos concierne. Hizo los siguientes señalamientos de error:

“(1) Erró la Autoridad al no fundamentar su decisión y no permitirle a Tishman que examinara la información relevante contenida en el expediente de esta subasta, incluyendo la propuesta agraciada.

(2) Erró la Autoridad al actuar deforma arbitraria e irrazonable al descartar la propuesta más favorable: 
*1084
la de Tishman. ”

Respondiendo a la petición de paralización de la firma del contrato presentada por Tishman, el 25 de enero de 2005 emitimos una Resolución en la que ordenamos la paralización de la firma del contrato y/o comienzo de las obras objeto de la subasta. Además, concedimos el término de diez días a las partes recurridas para que expresaran su posición sobre el recurso. Tres Ríos compareció oportunamente y la Autoridad de Carreteras y Transportación solicitó una prórroga para presentar su escrito, lo que hizo el 25 de febrero de 2005.
II
Aduce Tishman como primer señalamiento de error que incidió la Autoridad de Carreteras al no permitirle examinar las propuestas presentadas en relación a la subasta, violándole así el derecho de conocer los hechos y los fundamentos para adjudicarle el desarrollo conjunto a la desarrolladora Tres Ríos. En el mismo señalamiento de error, sostiene Tishman, además, que la Autoridad de Carreteras no fundamentó su decisión de adjudicarle el desarrollo conjunto de la Parcela A de la Estación Roosevelt a la desarrolladora Tres Ríos.
La primera parte del error señalado por Tishman consiste en que la Autoridad de Carreteras no le permitió el examen de las propuestas presentadas por otros licitadores, particularmente la de Tres Ríos, lo que la coloca en una posición de indefensión para pasar juicio e impugnar, de manera correcta y debidamente informada, la adjudicación de la subasta realizada por la Autoridad de Carreteras. Entendemos que le asiste la razón respecto a este planteamiento.
La sana administración de un gobierno es una virtud de democracia, y parte de una buena administración, implica llevar a cabo sus funciones como comprador con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa. De conformidad con lo anterior, los sistemas de subastas gubernamentales persiguen proteger los intereses y dineros del pueblo al promover la competencia para lograr los precios más bajos posibles. Además, dichos sistemas pretenden evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgar los contratos y el minimizar los riesgos de incumplimiento. En el caso Autoridad de Energía Eléctrica v. Maxon, 2004 J.T.S. 199, el Tribunal Supremo se expresó de la siguiente manera:

“Para dar cumplimiento a esta encomienda, de ordinario, se exige que el gobierno realice la adquisición de los materiales y servicios que necesita a través de subastas públicas. El objetivo principal de toda subasta pública es que haya competencia en las proposiciones de manera que el Estado consiga que se realice la obra al precio más bajo posible. Además, al requerirse que la subasta y el contrato se adjudiquen al postor más bajo, se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos. ”

Según el caso Mar-Mol Co., Inc. v. Adm. Servicios Gens., 126 D.P.R. 864, 871-872 (1990), es norma reiterada que el objetivo fundamental de las subastas gubernamentales es obtener el mejor contrato posible para el Estado. Se ha sostenido que el fin esencial de las subastas promovidas por el gobierno es que el Estado, al promover la competencia, consiga un proceso limpio en el cual no intervenga la corrupción ni el descuido al otorgarse los contratos.
Existen, además, otros factores de igual importancia. Entre éstos se encuentran los siguientes: que las propuestas cumplan con las especificaciones de la subasta, la habilidad del licitador para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, entre otros. Así, ningún postor tiene derecho a quejarse cuando otra propuesta se elige bajo el fundamento de ser la más ventajosa, si dicha determinación se ha hecho a base del interés público.
La sección 3.19 de la LPAU, 3 L.P.R.A. see. 2169, dispone lo siguiente:

*1085
“Los procedimientos de adjudicación de subastas serán procedimientos informales; su reglamentación y términos serán establecidos por las agencias. La parte adversamente afectada por una decisión podrá, dentro del término de diez (10) días, a partir de la adjudicación de la subasta, presentar una moción de reconsideración ante la agencia o la entidad apelativa de subastas, de existir una en la agencia, según sea el caso. La agencia, o la entidad apelativa deberá considerarla dentro de los diez (10) días de haberse presentado. Si se tomara alguna determinación en su consideración, el término para solicitar la revisión judicial empezará a contarse desde la fecha en que se archiva en autos una copia de la notificación de la decisión de la agencia o la entidad apelativa resolviendo la moción. Si la agencia o entidad apelativa dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que ésta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial”.

En Cotto Guadalupe v. Departamento de Educación, 138 D.P.R. 658 (1995), nuestro Tribunal Supremo, al interpretar la Sección 3.19 de la LPAU, supra, expresó que el propósito del legislador fue lograr que los procedimientos de adjudicación de subastas fueren de naturaleza informal y que fuese la propia agencia quien formulara las normas y términos de tales procedimientos.
A tenor con lo anterior, el Tribunal Supremo, en el caso L.P.C. & D., Inc. v. Autoridad de Carreteras, 149 D.P.R. 869 (1999), expresó que, aunque las subastas son procedimientos informales sui generis que gozan de ciertas características adjudicativas, cuando las agencias administrativas notifican la decisión tomada en determinada subasta, éstas también deben informar la disponibilidad y el plazo para solicitar la reconsideración o revisión. También, el Tribunal Supremo expresó que al notificar la decisión tomada en determinada subasta, las agencias administrativas deben informar, aunque sea sumaria y sucintamente, los fundamentos de dicha decisión. De lo contrario, el trámite de revisión judicial de la decisión administrativa sería un ejercicio fútil porque la parte adversamente afectada por dicha decisión desconocería los motivos que la agencia tuvo para proceder como lo hizo.
La intención del legislador al aprobar la sección 3.19 de la Ley de Procedimiento Administrativo Uniforme, supra, fue simplificar los procedimientos de subastas en su fase adjudicativa. Ahora bien, esta llamada informalidad cesa cuando una de las partes solicita reconsideración ante el organismo que celebre la subasta después que ésta se adjudica. Nuestro Tribunal Supremo, ha expresado claramente en Cotto Guadalupe v. Departamento de Educación, supra, que el propio legislador hizo dos excepciones al propósito de informalidad en el proceso de subastas, úna relativa a la reconsideración, y la otra a la revisión judicial. Así, cuando un licitador infructuoso decide ejercer su derecho a solicitar reconsideración de la adjudicación realizada, se abandona la parte informal para darle paso al proceso formal de la reconsideración y revisión de la decisión tomada.
El Reglamento de Subastas de la Autoridad de Carreteras, en su artículo VIII (C)(2)(b), dispone que al recibir propuestas, el organismo no las leerá en público, sino que sólo anunciará la identidad de los licitadores y que se mantendrán en forma confidencial todas las propuestas, evaluaciones, discusiones y negociaciones hasta la firma del contrato. El mismo dispone como sigue:

“b. Las Propuestas no se leerán en público. Sólo la identidad de los Licitadores se anunciará cuando se abran las Propuestas. Se mantendrá en forma confidencial todas las propuestas, evaluaciones, discusiones y negociaciones a través de toda la evaluación y negociación hasta la firma del contrato. Sólo los miembros de la Junta y del Comité de Evaluación y cualquier otra persona designada por el Director, tendrán acceso a las Propuestas y los resultados de las evaluaciones durante este período. Información sobre la que se tenga un derecho propietario y cualquier otra información que se identifique como confidencial por parte de los Licitadores, o que de otra forma se deba proteger de su publicación de acuerdo a la ley, no será hecha pública por la Autoridad en ningún momento ”.

*1086 Este reglamento violenta el derecho que tiene un licitador infructuoso de solicitar en forma efectiva la reconsideración de la adjudicación, ya que si no tiene acceso a examinar las otras propuestas presentadas, sobre todo del licitador agraciado, no puede determinar porqué la suya no era la mejor. Además, tampoco puede constatar si efectivamente la propuesta agraciada cumplía o no con los requisitos y condiciones de la subasta. En fin, los licitadores no favorecidos tendrían que atenerse a lo informado por la Autoridad de Carreteras en la decisión de adjudicación, sin poder constar y verificar su corrección. Esto pone'a dichos licitadores infructuosos en un estado de indenfensión, como bien señala Tishman, ante la decisión del organismo administrativo. También, a nuestro juicio, constituiría una burla a todos los claros precedentes judiciales que se permita la confidencialidad que dicho reglamento dispone.
El Artículo VIH (c) (2) (b), supra, obliga a que todo lo sometido ante la Autoridad de Carreteras permanezca en absoluta confidencialidad hasta que el contrato sea firmado, es decir, cuando ya resulta académico para los demás licitadores oponerse a la adjudicación. No solamente el citado artículo reglamentario coarta el derecho que tienen los demás licitadores a solicitar reconsideración e impugnar la adjudicación de la subasta ante los tribunales debidamente informados, sino que para éstos resultaría académico que posterior a la firma del contrato tuviesen acceso a las propuestas del licitador favorecido. Una vez se firma el contrato, a lo único que podrán tener derecho las partes no favorecidas es a una acción de daños y perjuicios contra la Autoridad de Carreteras, pero no a que se les otorgue el contrato de subasta.
En su escrito, sostiene la Autoridad de Carreteras que no estaba obligada a permitir a Tishman el examen de la propuesta agraciada y que estaba categóricamente impedida de hacerlo porque el propio Reglamento de Subastas se lo prohibía hasta tanto se hiciera efectivo el contrato. A la página 7 del referido escrito, sostiene la Autoridad de Carreteras lo siguiente:
“... que sólo los miembros de la Junta y del Comité de Evaluación y cualquier otra persona designada por el Director, tendrán acceso a las Propuestas y los resultados de las evaluaciones durante este período ”.
A la página 8, la Autoridad de Carreteras se expresó de la siguiente manera:

“La confidencialidad de este proceso debe enmarcarse dentro de su justa perspectiva. Este no es caprichoso, sino reglamentario. En el presente caso, la agencia viene obligada a adjudicar la subasta al postor que cumpla con los requisitos mínimos establecidos y que, ante su pericia administrativas, demuestre la más efectiva combinación del conjunto de la Parcela Roosevelt A. Como esta licitación y adjudicación no se llevan a cabo en el vacío, sino que se evalúan un sinnúmero de criterios atendidos deforma particular en las distintas propuestas, se justifica la confidencialidad del proceso”.

En su escrito, la Autoridad de Carreteras intenta justificar el hecho de no haberle permitido el examen de las propuestas a los licitadores infructuosos en que el Reglamento de Subastas así lo dispone, por lo que aduce que dicha actuación no resulta arbitraria. Esta justificación no es suficiente. El hecho de que el referido reglamento disponga la confidencialidad del proceso, no significa que esté correcto o que no violente el derecho que la ley provee a los que participaron del proceso de subasta para solicitar reconsideración y revisión ante los tribunales. Ya hemos visto que la reconsideración es un derecho de carácter formal que el legislador exceptuó de la informalidad de la subasta; no es posible que el que goza de ese derecho esté tan limitado, como lo está bajo el referido reglamento, a la hora de ejercerlo.
Por otra parte, resulta insostenible lo provisto en el reglamento y la posición adoptada por la Autoridad de Carreteras en cuanto a que únicamente pueden tener acceso a la propuesta del licitador agraciado los miembros de la Junta y del Comité de Evaluación y cualquier otra persona designada por el Director de la Autoridad de Carreteras. Esto es, que no sólo la parte que desea impugnar la adjudicación no tiene acceso a la propuesta, sino que los tribunales tampoco podrían examinarla en el proceso de revisión judicial. ¿Cómo podemos ejercer *1087 nuestra función revisora, si no tenemos acceso al expediente administrativo sobre las propuestas de la subasta?. Tal contención es totalmente contraria a la Ley de Procedimiento Administrativo Uniforme y a lo resuelto por el Tribunal Supremo, según antes hemos analizado. También debemos señalar que tal y como está redactado el inciso (b) del Artículo VIII, supra, concediendo al “Director” la facultad de designar a cualquier otra persona para tener acceso a la propuesta, se puede prestar a arbitrariedad o favoritismo.
Por los fundamentos antes considerados, se cometió el primer error señalado por Tishman al no haberle permitido examinar las propuestas de los demás licitadores bajo la justificación de que el Reglamento de Subastas no lo permite.
III
Tishman adujo, como segunda parte del primer error señalado, que la Autoridad de Carreteras no fundamentó su decisión al adjudicar el desarrollo conjunto de la Parcela A de la Estación Roosevelt a la desarrolladora Tres Ríos. La Resolución en Reconsideración emitida por la Autoridad de Carreteras el 13 de enero de 2005, a la página 3, expuso lo siguiente:

"La objeción de Tishman confunde el término de Minimum Land Value. Si bien es cierto que el valor mínimo tasado es de $13,300,000, la Solicitud de Propuestas (en adelante "RFP”) y la Solicitud de Best and Final Offers (en adelante “BAFO") dispusieron claramente que, para calcular el precio mínimo a pagarse, habrá de sustraer el valor tasado, ciertos créditos disponibles. Según los términos del RFP, el desarrollador designado tendrá que construir dos ascensores para servir la estación y tendrá que hacer varias mejoras al Parque Gándara, cuyos costos estimados ascienden a $900,000 y $1,000,000 respectivamente (secciones 4.1.0 y 4.3.2 del RFP) y podrán tomarse como créditos, reduciéndolos del precio mínimo. Aplicando dichos créditos, el valor mínimo de la Parcela A se reduce a $11,400,000 ($13,300,000 menos $1,900,000). Asimismo, la solicitud de BAFO permite a cada Lidiador reducir el precio mínimo por concepto de crédito correspondiente al 10% de Work Force Housing, según definido y establecido en la solicitud de BAFO. En el caso de Tres Ríos, donde podrían aplicar el crédito por 30 unidades, podrían reducir hasta $2,970,000. Sin embargo, en su Best and Final Offer, Tres Ríos ofreció $13,100,000, sin tomar ninguno de los créditos disponibles. Resulta entonces evidente, que la oferta de Tres Ríos no sólo alcanzó, sino que sobrepasó por un margen sustancial, el valor mínimo para la adquisición de los terrenos de la Parcela A, por lo que no existe base fáctica o jurídica para descalificar a este desarrollador por este concepto ”.

Aunque de manera sumaria, la Autoridad de Carreteras fundamentó su decisión de adjudicar el desarrollo conjunto de la Parcela A de la Estación Roosevelt a la desarrolladora Tres Ríos. Claro está, nuestra apreciación basada únicamente en lo que surge de la referida resolución y no en su corrección, pues ello dependerá de lo puedan plantear las partes, una vez tengan acceso a la propuesta de Tres Ríos.
IV
Como segundo error señalado, aduce Tishman que la decisión de la Autoridad de Carreteras resulta arbitraria, caprichosa e irrazonable. Respecto a este señalamiento y a la luz de lo que surge del récord, sujeto al examen de la propuesta de Tres Ríos y de lo que pueda alegar Tishman sobre ésta, una vez tenga la oportunidad de examinarla y compararla con la suya, no encontramos base para resolver que se cometió este error.
V
En esta sentencia estamos revocando la adjudicación de la subasta por las razones antes expuestas. Debemos señalar que no podemos retener jurisdicción sobre el recurso, mientras se lleva a cabo el examen de las propuestas de la subasta aquí concernida, dado a que estaríamos obviando el procedimiento formal a que tiene derecho todo licitador de solicitar reconsideración ante la Junta de Subastas. Además, no debemos anticipar cuál será el resultado que finalmente se tome a nivel administrativo. Esto es, que de la única forma que podemos garantizarle a los licitadores el derecho que les asistes antes mencionado, es que dejemos sin efecto lo *1088 actuado y que se siga el procedimiento establecido en la Ley de Procedimiento Uniforme, de acuerdo a los principios establecidos al respecto por el Tribunal Supremo.
VI
Conforme a lo anterior, se declara nula e inválida la disposición contenida en el Artículo VIII (c)(2)(b), que provee para la confidencialidad de todas las propuestas hasta la firma del contrato. Se revoca y deja sin efecto la resolución emitida por la Autoridad de Carreteras adjudicando el desarrollo conjunto de la Parcela A de la Estación Roosevelt a la desarrolladora Tres Ríos. Se dispone, además, que una vez advenga final y firme esta sentencia, que la Autoridad de Carreteras proceda dentro de los próximos cinco (5) días poner a la disposición de Tishman y cualquier otro licitador que lo interese, la propuesta de Tres Ríos para su examen. Igualmente, deberá permitir a Tres Ríos y a cualquier otro licitador de dicha subasta que lo interese, examinar dentro de dicho término, la propuesta de Tishman, de manera que tengan la oportunidad de hacer cualquier planteamiento que entiendan pertinente. Transcurrido el referido término de cinco (5) días, la Autoridad de Carreteras procederá a notificar nuevamente la adjudicación de la subasta, de manera que cualquier parte interesada pueda solicitar la reconsideración o revisión que entienda apropiada.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones