# 2004 DTA 103

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE PONCE

LOOMIS, FARGO & CO. OF PUERTO RICO, DEPARTAMENTO DE HACIENDA
Recurrente

v.

DEPARTAMENTO DE HACIENDA-JUNTA DE SUBASTAS
Recurridas

Núm. KLRA-04-00107

San Juan, Puerto Rico, a 10 de mayo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
la Juez Pabón Charneco y el Juez Rivera Martínez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La parte recurrente, Loomis, Fargo & Company of Puerto Rico ("*Loomis*"), es una corporación autorizada a hacer negocios en Puerto Rico, dedicada a proveer servicios de seguridad. La recurrida Ranger American Armored Services, Inc. ("*Ranger*") es una corporación similar, también dedicada a proveer servicios de seguridad.

A mediados de 2003, el Departamento de Hacienda publicó un aviso de subasta para la adquisición de servicios de transportación blindada para el depósito de valores de dicha agencia. Posteriormente, el Departamento aclaró que la licitación incluia el servicio para un total de 96 oficinas (95 colecturías y el Área del Tesoro), así como otros servicios adicionales y/o contingentes, tales como oficinas (colecturías nuevas), recogidos adicionales, entregas dedicadas especiales y tiempo de espera.

Loomis y Ranger comparecieron a la subasta. Para el servicio básico, Loomis ofreció una cotización para las 95 colecturías, ascendente a $29,925.00 mensuales. La oferta de Ranger fue sustancialmente más alta, de $33,600.00 mensuales, aunque la misma incluia el Área del Tesoro y la Oficina de Finanzas. ■

En cuanto a los otros servicios adicionales y contingentes, Loomis ofreció cotizaciones más bajas en cuanto a varias partidas, y Ranger en cuanto a otras.

Loomis cotizó $394.00 mensual por cada nueva oficina, mientras que Ranger cotizó $375.00; Loomis cotizó $125.00 por recogidos especiales, mientras que la cotización de Ranger era de $75.00 ó $100.00, dependiendo de si el recogido era en la zona metropolitana o en la Isla; Loomis cotizó $24.00 por viaje adicional, Ranger, $75.00; en cuanto al tiempo de espera, Loomis cotizó $2.50 por cada minuto en exceso de 15 minutos, mientras que Ranger ofreció una tarifa de $2.50 en exceso de 10 minutos de espera, más alta que Loomis.

El 26 de enero de 2004, Loomis recibió un aviso de adjudicación, donde se le informaba que el Departamento de Hacienda había decidido otorgar la subasta a Ranger. La notificación de la agencia no ofrecía explicaciones sobre su decisión. Únicamente se informó a las partes que la agencia había decidido otorgar la subasta a Ranger a base de los criterios de experiencia previa, calidad y costo por servicios recurrentes, en particular, nuevas oficinas y recogidos adicionales. El Departamento no elaboró sobre su ponderación de estos criterios, ni ofreció detalle adicional alguno que permitiera a Loomis entender la decisión tomada.

Inconforme con la adjudicación, Loomis solicitó que se le permitiera examinar el expediente de la subasta, a lo que el Departamento de Hacienda se negó. Loomis entonces presentó una solicitud de reconsideración, formulada en términos generales, reiterando su pedido de que se le permitiera examinar el expediente.

Luego de la presentación de dicho escrito, la agencia permitió a Loomis examinar el expediente, aunque no el obtener copia de los documentos relacionados a la adjudicación. Loomis fue informada que era norma del Departamento no expedir copia parcial o total del expediente en esa etapa del procedimiento.

A base de las notas tomadas, Loomis presentó un escrito suplementario.

El 9 de febrero de 2004, la Junta de Subastas de la agencia emitió una resolución declarando no ha lugar la solicitud de reconsideración de Loomis.

En su breve resolución, la Junta concluyó que lo *"más beneficioso para el interés público"* era adjudicar la subasta a Ranger. Dicha conclusión no estuvo acompañada de determinaciones específicas sobre las propuestas o de un análisis detallado de las mismas. La Junta se limitó a observar:

*"El Comité de Evaluación del Área de Rentas Internas realizó la evaluación correspondiente a las propuestas en referencia a base de criterios tanto cualitativos como cuantitativos en cuanto a servicios prestados se refiere, a saber: (1) la experiencia con la compañía Ranger refleja cumplimiento con los servicios contratados, no habiendo demoras en los recogidos, ni equívocos en las entregas realizadas; (2) en la parte cuantitativa, a pesar de que los costos de transportación blindada del licitador agraciado es mayor[,] su cargo por oficina nueva mensual es menor ($375.00 vs. $394.00), los recogidos adicionales por oficina menores ($75.00 vs. $125.00 por hora), servicios de utilidad excepcional por situaciones suscitadas en el pasado, (3) la calidad del servicio prestado por el Licitador Agraciado en los últimos dos (2) años refleja cumplimiento con los servicios contratados."*

La Junta de subastas denegó la moción de reconsideración de Loomis.

Loomis acudió entonces ante este Tribunal mediante el presente recurso.

Mediante resolución emitida el 4 de marzo de 2004 concedimos término a las partes recurridas para que comparecieran a mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la resolución recurrida.

Luego de varias prórrogas, las partes recurridas han comparecido por escrito.

Procedemos según lo intimado.

## II

En su recurso, Loomis plantea que el Departamento de Hacienda erró al adjudicar la subasta a Ranger a pesar de que la oferta de Loomis era mucho más baja.

El propósito de requerir que la realización de obras y la contratación por el gobierno sea conducido mediante el trámite de subasta, según se conoce, es proteger los intereses y dineros del pueblo. Dicho mecanismo, según ha explicado el Tribunal Supremo de Puerto Rico, sirve para promover la competencia y lograr los precios más bajos posibles, evita el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos y minimiza los riesgos de incumplimiento. *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864, 871 (1990); *Cancel v. Municipio de San Juan*, 101 D.P.R. 296, 300 (1973); *Justiniano v. E.L.A.*, 100 D.P.R. 334, 338 (1971).

Los procesos de subasta llevadas a cabo por el gobierno central y sus agencias bajo la Ley de Procedimiento Administrativo Uniforme son informales, 3 L.P.R.A. sec. 2169; *Rafael Rosario & Assoc. v. Depto. Familia*, 157 D.P.R. ___ (2002), **2002 J.T.S. 93**, a la pág. 1,342.

La Ley de Procedimiento Administrativo Uniforme, sin embargo, provee un detallado procedimiento para solicitar reconsideración y revisión de la adjudicación de una subasta. Estos trámites posteriores son formales. 3 L.P.R.A. secs. 2169 y 2172 (Supl. 2001); *Constructora Celta, Inc. v. A.P.*, 155 D.P.R. ___ (2002), **2002 J.T.S. 1**, a la pág. 546; *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. 869, 877 (2000); *Cotto v. Depto. de Educación*, 138 D.P.R. 658, 663-664 (1995).

En consecuencia, los mismos conllevan requisitos rigurosos de notificación y exposición de los fundamentos de la actuación administrativa, de manera que las partes puedan ejercitar su derecho a la revisión judicial. Véanse, *Rafael Rosario & Assoc. v. Depto. Familia*, **2002 J.T.S. 93**, a la pág. 1,342; *Constructora Celta, Inc. v. A.P.*, **2002 J.T.S. 1**, a la pág. 546; *Velázquez v. Adm. de Terrenos*, 153 D.P.R. ___ (2001), **2001 J.T.S. 35**, a la pág. 974; *L.P. C. & D., Inc. v. A.C.*, 149 D.P.R. a las págs. 878-879; *RBR Construction, S.E. v. A.C.*, 149 D.P.R. 836, 854-855 (2000); *Const. I. Meléndez, S.E. v. A.C.*, 146 D.P.R. 743, 749 (1998).

La resolución que emita la agencia en estos casos debe contener, cuando menos, la siguiente información: los nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y la disponibilidad y el plazo para solicitar reconsideración o revisión. *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. a la pág. 879; véanse, además, *Pta. Arenas Concrete, Inc. V. J. Subastas*, 153 D.P.R. ___ (2001), **2001 J.T.S. 50**, a las págs. 1078-9; *IM Winner, Inc. v. Mun. de Guayanilla*, 151 D.P.R. ___ (2000), **2000 J.T.S. 86**, a la pág. 1,134.

Lo anterior es consistente con las garantías requeridas en los procedimientos adjudicativos ante las agencias administrativas.

En efecto, la función principal de la revisión judicial de decisiones administrativas es asegurarse de que las agencias administrativas con poderes adjudicativos actúen dentro de la facultad delegada por la Asamblea Legislativa y que cumplan con los preceptos constitucionales correspondientes, particularmente, los dictados por el debido proceso de ley. *Assoc. Ins. Agencies v. Com. Seg. P.R.*, 144 D.P.R. 425, 435 (1997); véase, además, *Misión Ind. P.R. v. J.P.*, 146 D.P.R. 64, 130 (1998).

La Ley de Procedimiento Administrativo Uniforme reconoce que las partes en este tipo de procedimientos gozan del derecho a la notificación oportuna de las determinaciones de la agencia, a presentar evidencia en apoyo de su posición, a que la adjudicación sea realizada por un juez imparcial y a que la decisión esté basada en el expediente. 3 L.P.R.A. sec. 2151; véase, además, *Ramírez v. Policía de P.R.*, 158 D.P.R. ___ (2003), **2003 J.T.S. 3**, a la pág. 373; *Magriz v. Empresas Nativas*, 143 D.P.R. 63, 70 (1997); *López y Otros v. Asoc. de Taxis de Cayey*, 142 D.P.R. 109, 113-114 (1996).

Es insostenible la práctica de adjudicar controversias a la luz de evidencia secreta que no puede ser conocida, explicada o rebatida por las partes. *Torres Ramos v. Policía de P.R.*, 143 D.P.R. 783, 796 (1997); *López y Otros v.*

*Asoc. de Taxis de Cayey*, 142 D.P.R. a la pág. 116; *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230 (1987); *López v. Junta de Planificación*, 80 D.P.R. 646, 670 (1958).

Ahora bien, según ha observado el Tribunal Supremo de Puerto Rico, para que pueda hacerse valer el derecho a la revisión judicial, las agencias administrativas vienen obligadas a expresar claramente sus determinaciones de hechos y las razones para sus decisiones, incluyendo los hechos básicos de los cuales, a través de un proceso de razonamiento e inferencias, se derivan aquéllas. Las decisiones deben reflejar que el foro administrativo ha considerado y ha resuelto los conflictos de prueba, y sus determinaciones deben cubrir tanto los hechos probados como los que fueron rechazados. No pueden ser pro forma, y deben reflejar que la agencia ha cumplido con su obligación de evaluar y resolver los conflictos ante su consideración. *Mun. de San Juan v. J.C.A.*, 152 D.P.R. ___ (2000), **2000 J.T.S. 193**, a la pág. 482; *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 280-281 (1999); *Assoc. Ins. Agencies v. Com. Seg. P.R.*, 144 D.P.R. a la págs. 437-438.

Para conseguir lo anterior, la sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2164, requiere que cualquier orden o resolución final emitida por una agencia en un procedimiento de naturaleza adjudicativa incluya y exponga "*separadamente determinaciones de hechos si éstas no se han renunciado [y] conclusiones de derecho, que fundamentan la adjudicación.*"

El Tribunal Supremo de Puerto Rico ha aclarado que se trata de un requisito de debido procedimiento de ley. *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 274 (1987); Véanse, además, *Vega Cruz v. Comisión Industrial*, 110 D.P.R. 349, 352-353 (1980); *P.N.P. v. Tribunal Electoral*, 104 D.P.R. 1, 3-4 (1975); *López v. Junta de Planificación*, 80 D.P.R. 646, 667 (1958).

El Tribunal Supremo ha explicado que entre otros propósitos perseguidos por este requisito se incluye: (1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender porqué el organismo administrativo decidió como lo hizo y, al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intraagencial, en particular, en cuanto el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir prueba; (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. a las págs. 280-281.

Dicho requisito se aplica, según hemos indicado, a procedimientos de naturaleza informal, incluso aquéllos de adjudicación de subastas. *Pta. Arenas Concrete, Inc. V. J. Subastas*, **2001 J.T.S. 50**, a las págs. 1078-9; *IM Winner, Inc. v. Mun. de Guayanilla*, **2000 J.T.S. 86**, a la pág. 1,134; *L.P.C. & D., Inc. v. A.C.*, 149 D.P.R. a las págs. 877-878; *Mun. de San Juan v. J.C.A.*, 149 D.P.R. a las págs. 280-281; *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. a la pág. 265.

En la situación de autos, según hemos visto, la licitación de Loomis resultaba sustancialmente inferior en precio a la de Ranger. No obstante, la notificación de la adjudicación de la subasta enviada por el Departamento de Hacienda no explicaba los fundamentos de la decisión de la agencia. Aunque dicha notificación mencionaba que se habían considerado los factores de experiencia previa, calidad y costo por servicios recurrentes, señalando, entre éstos, a la cotización nuevas oficinas y recogidos adicionales, la notificación no contenía explicación alguna sobre cómo se habían tomado en consideración dichos factores.

Loomis solicitó acceso al expediente, la que le fue denegada por la agencia, a pesar de que la subasta ya había sido otorgada y se había notificado la decisión.

Los documentos en cuestión, sin embargo, son documentos públicos. Véase, 26 L.P.R.A. secs. 212 y 218;

véase, además, 3 L.P.R.A. sec. 1001.

El Tribunal Supremo de Puerto Rico ha reconocido que los ciudadanos de nuestra jurisdicción tienen un derecho de acceso a la documentación pública, el cual es un corolario necesario de los derechos de libertad de expresión, prensa y asociación establecidos por la Sección 4 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, ___ D.P.R. ___ (2003), **2003 J.T. S. 130**, a la pág. 1,354; *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42, 55 (1993); *Noriega v. Gobernador*, 130 D.P.R. 919, 937 (1992); *López Vives v. Policía de P.R.*, 118 D.P.R. a la pág. 227; *Santiago v. Bobb*, 117 D. P.R. 153, 159 (1986); *Soto v. Srio. de Justicia*, 112 D.P.R. 477, 485 (1982).

El Tribunal Supremo de Puerto Rico ha aclarado que cualquier ciudadano tiene interés especial para solicitar examinar documentación pública. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Bauermeister*, 152 D.P.R. ___ (2000), **2000 J.T.S. 157**, a la pág. 185; véase, además, 32 L.P.R.A., sec. 1781.

Aunque no se trata de un derecho absoluto, el peso corresponde al Estado para justificar a plenitud cualquier reclamo de confidencialidad, el cual deberá ser examinado de la forma más favorable a favor del reclamante y en contra del privilegio. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a las págs. 1,354-5; *López Vives v. Policía de P.R.*, 118 D.P.R. a la pág. 233.

Como regla general, el Estado sólo puede reclamar válidamente la secretividad de información pública en un número limitado de supuestos, a saber, cuando: (1) una ley (o un reglamento) así específicamente lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente conforme a la Regla 32 de Evidencia, 32 L.P.R.A. Ap. IV; o (5) sea información oficial conforme a la Regla 31 de Evidencia. Véanse, *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Bauermeister*, **2000 J.T.S. 157**, a la pág. 186; *Angueira v. J.L.B.P.*, 150 D.P.R. 10, 24 (2000).

Cuando el gobierno invoca una ley o reglamento como fundamento para negar al ciudadano el acceso a información pública, la regulación debe satisfacer un escrutinio judicial **estricto**. En concreto, deben cumplirse los siguientes requisitos: (a) caer dentro del poder constitucional del gobierno; (b) propulsar un interés gubernamental apremiante; (c) que tal interés no esté directamente relacionado con la supresión de la libertad de expresión; y (d) que la restricción a la libertad de expresión no sea mayor de lo necesario para propulsar dicho interés. *Nieves Falcón v. Junta de Libertad Bajo Palabra*, **2003 J.T.S. 130**, a la pág. 1,354; *Ortiz v. Bauermeister,* **2000 J.T.S. 157**, a la pág. 186.

Ninguna legislación que no contenga estándares apropiados para determinar el tipo de documento e información que habrá de estar sujeta al escrutinio público y que, por el contrario, establezca una norma de confidencialidad absoluta, puede superar el escrutinio constitucional. *Nieves Falcón v. Junta de Libertad Bajo Palabra,* **2003 J.T.S. 130**, a la pág. 1,354; *Soto v. Srio. de Justicia*, 112 D.P.R. a la pág. 495.

El derecho de acceso a los documentos públicos implica la obligación correlativa de permitir dicha inspección, el cual puede ser reclamado mediante un mandamus. *Dávila v. Superintendente de Elecciones*, 82 D.P.R. 264, 277-279 (1960).

En el presente caso, según hemos visto, la subasta había sido notificada a las partes, por lo que no percibimos razón para que se denegara acceso a Loomis al expediente. Compárese, *Ortiz v. Bauermeister*, **2000 J.T.S. 157**, a la pág. 189.

Aunque a Loomis posteriormente le fue permitido ver el expediente, la agencia no accedió a que tuviera copia de los documentos relacionados a la adjudicación de la subasta, por lo que la comparecencia posterior de dicha parte tuvo que descansar en notas tomadas por sus abogados. Creemos que este trámite fue irregular, y que el mismo posiblemente privó a la recurrente de una oportunidad real de dilucidar sus planteamientos en torno a la decisión recurrida ante el foro administrativo.

El Departamento de Hacienda, según hemos visto, emitió una resolución posterior el 9 de febrero de 2004, denegando la moción de reconsideración de Loomis. Dicha resolución tampoco nos asiste para sostener la determinación de la agencia.

En su resolución, la Junta de Subastas del Departamento hizo hincapié en que su experiencia anterior con Ranger había sido satisfactoria. Dicho criterio, por sí sólo, resulta insuficiente para justificar la decisión de otorgar la subasta a dicha parte, particularmente ante la sustancial diferencia de precio entre las cotizaciones.

Reconocemos que el hecho de que una agencia hubiera tenido negocios anteriores exitosos con una parte puede constituir un factor razonable para escoger su licitación entre otras ofertas comparables o cercanas en precios. Pero cuando la diferencia entre las licitaciones es sustancial, como sucede en el caso de autos, no está claro que dicho factor deba ser, de por sí, determinante en la decisión de la agencia, en ausencia de otras circunstancias que justifiquen dicha apreciación. ██ Lo contrario implicaría la inamovilidad de los contratistas de gobierno.

El Departamento de Hacienda también expresó que había considerado que Loomis había presentado una oferta que resultaba más alta en cuanto a algunas de las partidas adicionales y/o contingentes. Expresó, en este sentido, que Loomis había ofrecido licitaciones más altas con respecto a los servicios para nuevas oficinas y para recogidos adicionales.

No está claro que dichas consideraciones sean suficientes para otorgar la subasta a Ranger. Lo cierto es que dichos servicios adicionales y/o contingentes no eran, como tal, parte de la subasta. La oferta de Loomis resultaba superior a la de Ranger en cuanto a varias de estas partidas (viz, Loomis cotizó $24.00 por viajes adicionales, mientras que Ranger cotizó $75.00; Loomis cotizó $2.50 por cada minuto de espera en exceso de 15 minutos, mientras que Ranger cotizó lo mismo, pero para cada minuto en exceso de 10 minutos de espera).

A nuestro juicio, es indispensable que cuando una agencia desea favorecer a un licitador que ha presentado una oferta que conlleva una erogación sustancialmente mayor de fondos públicos, tal decisión debe ser razonablemente justificada, exponiéndose de forma clara los fundamentos para dicha actuación.

En el presente caso, el Departamento de Hacienda no ofreció explicación alguna por la cual los renglones en los cuales Ranger había cotizado más bajo eran más importantes o significativos que aquéllos en que la cotización de Loomis era la más baja. No se aclaró, por ejemplo, que se anticipara un número específico de oficinas nuevas o de recogidos especiales que permitieran a este Tribunal concluir que la oferta de Ranger efectivamente conllevaría un ahorro al erario. Tampoco se explicó porqué aquellos renglones adicionales en los que la oferta de Loomis resultaba superior a la de Ranger no debían ser tomados en cuenta, para la adjudicación de la subasta.

La adjudicación de una subasta a base de partidas *"adicionales"* o *"contingentes"* introduce un grado de especulación en la determinación administrativa, y podría, de convertirse en una práctica generalizada, derrotar la política pública en esta área, que persigue que el gobierno logre los mejores negocios posibles. Si determinados servicios resultan necesarios y accesorios a la contratación por parte de una agencia, el aviso de subasta generalmente así lo debe indicar, y dichas partidas deben ser sumadas para determinar cuál es el mejor postor de la subasta.

En el presente caso, este Tribunal no está en posición de concluir que la determinación de la agencia efectivamente represente el mejor negocio para el Gobierno. Al contrario, desde el punto de vista de los servicios objeto de la licitación, la oferta de Ranger resulta menos ventajosa para el Estado que la de Loomis.

Reconocemos que las decisiones de los organismos administrativos merecen deferencia. Pero esto no implica que debamos avalar una decisión administrativa errónea. *A.A.A. v. Unión Abo. A.A.A.,* 158 D.P.R. ___ (2002), **2002 J.T.S. 155**, a la págs. 338-339; *Franco v. Depto. de Educación,* 148 D.P.R. 703, 709 (1999); *Fuertes y Otros v., A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

Los Tribunales debemos rechazar una decisión administrativa cuando la misma no está apoyada en el récord de un caso o resulta irrazonable. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70, 77 (2000); *RBR Const., S.E. v. A.C.,* 149 D.P.R. a la pág. 856.

En el presente caso, concluimos que el Departamento de Hacienda erró al adjudicar la subasta a Ranger.

Por los fundamentos expresados, se expide el auto solicitado y se revoca la resolución recurrida. En su lugar se dicta sentencia ordenando al Departamento de Hacienda adjudicar la subasta en controversia a Loomis.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 103

1. Según se desprende del récord, el Departamento de Hacienda no solicitó servicio de recogido en el Área de Finanzas, el cual no iba a ser necesario para el año en cuestión. Por otro lado, aunque Loomis no cotizó para el Área de Tesoro aclaró que estaba dispuesta a proveer el servicio para dicha facilidad a base del mismo precio.

2. Ello podría suceder, por ejemplo, cuando por la naturaleza de los servicios a ser contratados, resulte deseable que el contratante esté familiarizado con los procedimientos ante la agencia. No surge de los autos, sin embargo, que los servicios objeto de la presente contratación, requieran tal familiaridad previa.