# 2007 DTA 81

### TRIBUNAL DE APELACIONES
### REGIÓN JUDICIAL DE SAN JUAN
### PANEL V

MANGUAL'S OFFICE CLEANING SERVICES, INC.
Recurrente

v.

JUNTA APELATIVA DE SUBASTAS, JUNTA DE SUBASTAS, AUTORIDAD DE LOS PUERTOS
Recurrida

Núm. KLRA-07-00454

San Juan, Puerto Rico, a 13 de junio de 2007

Panel integrado por su Presidente, el Juez Arbona Lago,
y los Jueces Brau Ramírez y Salas Soler

Salas Soler, Juez Ponente

SENTENCIA

**TEXTO COMPLETO DE LA SENTENCIA**

El 19 de marzo de 2007, Mangual's Office Clearing Services, Inc. (en adelante, Mangual's o Recurrente) presentó este recurso de revisión administrativa para impugnar la adjudicación de subasta que a favor de North Janitorial Services (en adelante, NJS) hiciera la Junta de Subastas (en adelante, Junta o Recurrida) de la Autoridad de los Puertos (en adelante, AP o Recurrida), el 24 de abril del presente.

Mangual's señaló cinco errores en su legajo; el primero, relacionado con la notificación de la adjudicación de la subasta; los restantes cuatro, sobre la validez de la adjudicación a NJS.

Luego de paralizar los procedimientos, comparecieron la AP, la Junta y la Junta Apelativa de Subastas (en adelante, JAS o Recurrida) de la AP, y se opusieron a la paralización así como al recurso de revisión.

Según intimado y acorde con nuestras Reglas 64 y 7(B)(5), 4 L.P.R.A. Ap. XXII-B, dejamos sin efecto nuestra orden para que el Procurador General (en adelante, Procurador) se expresara, y porque nos hallamos en posición de resolver conforme a los autos, así procedemos a hacer.

En consecuencia de lo anterior y los fundamentos que a continuación expresamos, dejamos sin efecto la paralización de los procedimientos, declaramos sin lugar el recurso de revisión de epígrafe, y confirmamos la determinación de la Recurrida.

## I

El 24 de abril de 2007, la Junta notificó la adjudicación de subasta a favor de NJS, a ésta, Mangual's, y a MJ Consulting & Development, Inc. (en adelante, MJ). Apéndice, páginas 1-3. El Director Ejecutivo de la AP adjudicó la subasta a NJS por ser ésta el *"postor más bajo cualificado que cumple sustancialmente con las especificaciones, términos y condiciones de la subasta"*. Apéndice, página 1.

Mangual's y MJ, *"presentaron ofertas más altas [$3,636,000.00 y $4,304,276.18, respectivamente] que el licitador agraciado [$2,457,600.00]"*. *Íd.*

Al final de la notificación, se le advierte al licitador que no esté conforme que puede solicitar reconsideración ante la JAS, dentro de diez días, según el Reglamento de Subastas de la AP, Número 7178 del 7 de julio de 2006 (en adelante, Reglamento de la AP). Apéndice, página 2.

El 3 de mayo de 2007, Mangual's presentó solicitud de reconsideración, donde planteó virtualmente los mismos errores que ante nos esbozó. Apéndice, páginas 10-22.

Seguidamente, el 11 de mayo, la JAS declaró no ha lugar la reconsideración. Apéndice, páginas 4-9. En síntesis, la JAS resolvió que, *"[l]a Junta de Subastas en su análisis toma en consideración todos los aspectos de los pliegos de subasta y de los elementos externos relacionados como la capacidad de los licitadores, su pericia, experiencias previas, capacidad económica, entre otros. El precio es el aspecto más relevante, pero no el único. No se desprende del expediente de la subasta de referencia que no se hayan tomado en consideración todos estos aspectos o que en su defecto, se obviara realizar un análisis cuidadoso de las propuestas para tomar la decisión idónea de la misma"*. *Íd.*, página 8.

No conforme, Mangual's recurrió ante nosotros, mediante recurso de revisión, y le imputó cinco errores a la Recurrida. El primer error, indica que la Junta no advirtió del derecho a revisión judicial ni el término. Los demás cuatro errores versan sobre los méritos de la adjudicación de la subasta a NJS.

A instancias de la Recurrente, el pasado 31 de mayo, paralizamos los procedimientos y concedimos quince días al Procurador para que se expresara. No obstante, el 6 de junio, la Recurrida compareció mediante escrito intitulado *"Moción en Reconsideración Urgente a Resolución y en Oposición a Moción Urgente de Auxilio de Jurisdicción y en Solicitud de Paralización"*. En esencia, la Recurrida se opuso a la paralización porque ya se otorgó el contrato entre la AP y NJS desde el 27 de abril de 2007, por lo cual, ya NJS está prestando servicios de limpieza en áreas extensas y de alto volumen de tráfico, en el Aeropuerto Luis Muñoz Marín (en adelante, LMM). Además, reiteró la AP que NJS no sólo fue el postor más bajo, sino que también cumplió con las especificaciones, términos y condiciones de la subasta. Añadió que la corroboración de referencias de NJS con otras agencias fue satisfactoria. Aunque someramente, la AP también replicó a los méritos del recurso de revisión.

En virtud de todo lo anterior, dimos por sometida la causa para resolver según los autos. No obstante, durante la redacción de esta Sentencia recibimos sendo alegato de la Recurrida, el cual también consideramos. Así, procedemos a confirmar la decisión de la AP, al tenor de los siguientes fundamentos.

## II

Comencemos por recordar que el Derecho Administrativo *vis a vis* el Derecho Apelativo requiere que le brindemos la mayor deferencia a las determinaciones administrativas, pues a éstas les cobija una presunción de regularidad y corrección. *Polanco López v. Cacique Motors*, res. el 30 de junio de 2005, **2005 JTS 101**. Las determinaciones de hechos serán examinadas al tenor de lo anterior, debido a que las agencias gozan de un conocimiento especializado o *expertise*, que les ubica en mejor posición que un foro revisor como este Tribunal de Apelaciones, para apreciar la prueba ante sí vertida y adoptar las consecuentes determinaciones de hechos. *Empresas Toledo v. Junta de Revisión y Apelación de Subastas*, res. el 31 de agosto de 2006, **2006 JTS 147**;

*Rodríguez Dilán v. Guacoso Auto Corp.*, res. el 5 de diciembre de 2005, **2005 JTS 187**; *O.E.G. v. Rodríguez y Otros*, 159 D.P.R. 98 (2003).

Por el contrario, las conclusiones de derecho podremos revisarlas en su totalidad. *Otero Mercado v. Toyota de P.R. Corp.*, res. el 3 de febrero de 2005, **2005 JTS 13**. Recordemos que hay "*cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa*", y en estas últimas, con cautela intervendremos. *Rebollo v. Yiyi Motors*, res. el 13 de enero de 2004, **2004 JTS 4**.

La presente causa versa sobre la impugnación de la adjudicación de una subasta de servicios de limpieza para el Aeropuerto LMM.

Al revisar este tipo de adjudicaciones, debemos tener presente que el fin primordial es velar por el mejor uso de los fondos públicos. *RBR Construction, S.E. v. Autoridad de Carreteras*, 149 D.P.R. 836 (1999).

Entre las consideraciones para adjudicar una subasta, el precio más bajo es el aspecto de mayor relevancia. Sin embargo, hay otras consideraciones, como lo es el cumplimiento de los términos y las especificaciones de la subasta previo a la otorgación del contrato. *Empresas Toledo v. Junta de Revisión y Apelación de Subastas*, *supra.*

Lo anterior, compete a las agencias y a las juntas de subastas dirimir. Ellas están en mejor posición para evaluar en primera instancia las propuestas de los licitadores, así como los documentos que acompañan las mismas, y así arribar a una informada decisión a la luz del conocimiento especializado que gozan. Hay tecnicismos y consideraciones que sólo las agencias conocen y dominan debido a su experiencia, *expertise* y su intervención recurrente con tales aspectos y actividades propias del ámbito administrativo. *Íd.*

Al remitirnos a los señalamientos de error de la Recurrente, y enmarcarlos en el derecho esbozado, opinamos que no se cometieron. A continuación, por su imbricada relación, discutimos los errores en conjunto.

Primeramente, como bien reiteró la JAS, la adjudicación de la subasta incluyó al final, para ser exactos, en su penúltimo párrafo, la advertencia del derecho a solicitar reconsideración ante la JAS, así como el término para hacerlo. No tiene razón Mangual's en que la Junta no le advirtió de su derecho a revisión judicial, pues como vimos, se le advirtió que conforme al Reglamento de la AP podía solicitar reconsideración dentro de diez días ante la JAS. Igualmente, luego de la JAS resolver la reconsideración de la Recurrente, se le advirtió sobre su derecho a revisión judicial ante nos, y el término para ello, conforme a la Ley de Procedimiento Administrativo Uniforme (en adelante, LPAU).

Es preciso recordar que la doctrina de agotar remedios administrativos implica que primero la Recurrente tenía que solicitar reconsideración ante la JAS, con anterioridad a acudir al Tribunal de Apelaciones. *Municipio de San Juan v. Bosque Real S.E.*, 158 D.P.R. 743, 772 (2003).

Sobre la alegación de que la adjudicación de la subasta carece de fundamentos adecuados y suficientes en derecho, cabe recordar que basta con que la notificación contenga una breve y clara explicación de porqué se seleccionó un licitador sobre otros. *Punta de Arenas Concrete, Inc. v. Junta de Subastas*, 153 D.P.R. 733 (2001); *L.P.C. & D., Inc. v. Autoridad de Carreteras*, 149 D.P.R. 869 (1999). Precisamente, la Junta consignó en su notificación que NJS era el postor sustancialmente más bajo y que cumplía con las especificaciones y condiciones de la subasta, contrario a Mangual's y MJ. Nótese que la Recurrente no nos ha situado en posición de diferir de la Junta ni de la JAS, en cuanto a que NJS no satisfizo las especificaciones y términos de la subasta. Del expediente tampoco surgen elementos o prueba alguna que nos mueva a sustituir el criterio estimador discrecional de la AP. Cabe recordar que meras alegaciones no constituyen prueba. *Pacheco Torres*

Publicaciones JTS presenta dos nuevas obras de Derecho Penal: Derecho Procesal Penal: Etapa Investigativa y Derecho Penal Sustantivo

JTS

# Ernesto L. Chiesa

Ernesto L. Chiesa obtuvo su bachillerato en Artes (Filosofía) en la Universidad de Puerto Rico en 1964; obtuvo una Maestría en Filosofía en la misma institución en 1967. Luego cursó estudios doctorales en Lógica en la Universidad de California en Berkeley. En 1974 obtuvo el grado de Juris Doctor —Magna Cum Laude— en la Escuela de Derecho de la Universidad de Puerto Rico. Ha ocupado diversas posiciones en la Universidad de Puerto Rico desde 1964 hasta el presente, incluyendo Catedrático de la Escuela de Derecho donde dicta cursos de evidencia, derecho penal y procedimiento criminal. Ocupó el puesto de Secretario del Tribunal Supremo desde septiembre de 1976 hasta agosto de 1981. Fue colaborador del Tribunal Supremo en la preparación del Proyecto de Reglas de Evidencia que finalmente fuera aprobado en el 1979. Ha publicado sendos artículos de revistas jurídicas. Ha sido principal colaborador de la publicación JTS®™ y autor del Análisis Editorial de Práctica Procesal Puertorriqueña - Evidencia y de la obra Derecho Procesal Penal de Puerto Rico y Estados Unidos. Su Obra Magna es el Tratado de Derecho Probatorio, bajo el sello editorial de Publicaciones JTS. El Profesor Chiesa es continuamente citado por el Tribunal Supremo al igual que por el Tribunal de Apelaciones y los Tribunales de Primera Instancia en Puerto Rico. Entre sus múltiples distinciones profesionales se cuentan: Miembro del American Law Institute; Director de la Conferencia Judicial de Puerto Rico (1990-93); Presidente del Comité de Reglas de Evidencia de la Conferencia Judicial de Puerto Rico (1984-88); Miembro del Comité de Procedimiento Criminal y Evidencia (1984-92); Miembro Honorario del Ilustre Colegio de Abogados Penalistas de Bogotá (1994) y Académico Numerario de la Academia Puertorriqueña de Jurisprudencia y Legislación.

Actualmente preside el Comité del Tribunal Supremo que revisa las Reglas de Procedimiento Criminal (con el objetivo de someter a la Asamblea Legislativa unas nuevas reglas) y es miembro de otro Comité del Tribunal Supremo que revisa las Reglas de Evidencia. Fue miembro del Comité del Tribunal Supremo que estuvo a cargo de la Revisión del Manual de Instrucciones al Jurado. Desde hace más de 18 años, el Profesor Chiesa trabaja como asesor del Secretario de Justicia y del Procurador General en materia de Derecho Penal, Derecho Procesal Penal y Evidencia.

# DERECHO PROCESAL PENAL: ETAPA INVESTIGATIVA

Esta obra pretende presentar una exposición del derecho procesal penal en la etapa investigativa, con énfasis en los derechos constitucionales que amparan al ciudadano en esa etapa del procedimiento. Habida cuenta de la primacía de la Carta de Derechos en esta zona, se alude continuamente a la jurisprudencia de la Corte Suprema de los Estados Unidos y a la del Tribunal Supremo de Puerto Rico, que son las fuentes de derecho primarias. Como es harto sabido, los derechos de la persona reconocidos en la Carta de Derechos de la Constitución de los Estados Unidos tienen que ser reconocidos por los gobiernos de los Estados y de Puerto Rico, aunque éstos pueden reconocer garantías adicionales. En el Capítulo I se aborda lo relativo a la aplicación de la Carta de Derechos de la Constitución de los Estados Unidos a Puerto Rico.

En el Capítulo II se expone el derecho que gobierna el interrogatorio de testigos y sospechosos, materia gobernada por las cláusulas del debido proceso de ley, privilegio contra la autoincriminación y asistencia de abogado. Se aborda, además, lo relativo a la determinación de admisibilidad y suficiencia de las declaraciones obtenidas en esa etapa. Aquí, el derecho constitucional es totalmente controlante, con poca regulación estatutaria.

En el Capítulo III se expone el derecho aplicable a los procedimientos de identificación de sospechosos fuera de corte. Se aborda la protección constitucional que brindan el debido proceso de ley y el derecho a asistencia de abogado, y se explica por qué no hay protección bajo el derecho contra la autoincriminación. Se alude también al rol del derecho a la intimidad en esta zona. Por supuesto, se aborda la regulación estatutaria en la Regla 252 de Procedimiento Criminal.

En el Capítulo IV, por mucho el más extenso, se aborda el complicado derecho que rige la protección constitucional contra registros y detenciones irrazonables, tanto bajo la Enmienda Cuarta como bajo la mayor protección que surge de las secciones 1, 8 y 10 de la Carta de Derechos de la Constitución de Puerto Rico. Por supuesto, se considera también la regulación en las Reglas de Procedimiento Criminal, particularmente la Regla 234 que gobierna lo relativo a la moción de supresión de evidencia. Es en este Capítulo que se aborda el derecho constitucional a la intimidad. Se aborda primeramente todo lo relativo a la regla de exclusión en que se traduce la protección constitucional (alcance de la regla de exclusión y la

moción de supresión) y luego se aborda el alcance de la protección constitucional. Esto, a su vez, se divide en las exigencias para una orden judicial de arresto o de registro (warrant clause) y en la exigencia constitucional de razonabilidad para arrestos o registros sin orden judicial. De ahí la necesidad de aludir al derecho que gobierna el arresto sin orden y lo relativo a los distintos registros sin previa orden judicial. También se consideran registros y detenciones particulares, como el "stop and frisk", la detención y registro de vehículos, registros administrativos y otros.

Finalmente, en el Capítulo V se aborda el derecho constitucional contra la autoincriminación. Primeramente se aborda el derecho en general; su alcance, limitaciones, la inmunidad como mecanismo para neutralizar el privilegio, etc. Luego se atiende lo relativo al derecho especial que ampara al ya acusado a no declarar y a que no se hagan inferencias del ejercicio de ese derecho. Aunque esta dimensión del derecho supone ya el inicio de la acción penal (más allá de la etapa investigativa), se incluye para presentar una visión más completa del derecho contra la autoincriminación. En el Capítulo II ya se había abordado el derecho contra la autoincriminación en la zona del interrogatorio de testigos y sospechosos (Miranda y su progenie).

Se advierte que queda fuera de ese libro lo relativo al derecho especial que gobierna la legislación federal especial "antiterrorista", es decir, el Patriot Act y las acciones legislativas y ejecutivas en esta sensitiva zona. Para eso hay que considerar la literatura especializada y esperar por más jurisprudencia de la Corte Suprema que aclare la validez de las limitaciones a los derechos constitucionales de la persona que entraña esa legislación.

Este libro va dirigido a estudiantes, abogados, fiscales y jueces. No hay pretensión alguna más allá de ayudar a éstos a encontrar, y tal vez entender mejor, el derecho positivo que aparentemente gobierna los procesos de investigación criminal tratados en este trabajo. Por supuesto, estamos ante una zona de continuo devenir; se produce mucha jurisprudencia que cambia ese derecho positivo. De ahí la necesidad de suplementar anualmente este libro para incorporar la jurisprudencia del Tribunal Supremo de Puerto Rico y de la Corte Suprema de los Estados Unidos.

# Lic. Luis E. Chiesa

Luis Ernesto Chiesa Aponte es Profesor Adjunto de Derecho Penal en la Facultad de Derecho de Pace University en White Plains, New York. Obtuvo su Bachillerato en Administración de Empresas y revalidó como Contador Público Autorizado. Luego obtuvo su grado de Juris Doctor (Summa Cum Laude) en la Facultad de Derecho de la Universidad de Puerto Rico. Posteriormente, recibió el grado de Maestría en Derecho (LL.M) de Columbia University. Actualmente se encuentra cursando estudios conducentes al grado de Doctor en las Ciencias Jurídicas (J.S.D.) en Columbia University. Una porción de su tesis doctoral, la cual versa sobre ciertos aspectos debatidos de la teoría de la antijuricidad penal, ha sido aceptada para publicación en el Buffalo Criminal Law Review. Además, ha publicado sendos artículos en las principales revistas jurídicas de Puerto Rico sobre distintos aspectos del derecho penal.

Antes de comenzar sus labores docentes en Pace University, Luis Ernesto Chiesa fue Profesor Adjunto de Derecho Penal en la Facultad de Derecho de la Universidad de Puerto Rico y Oficial Jurídico del Juez Presidente del Tribunal Supremo de Puerto Rico, Hon. Federico Hernández Denton. Durante dicho tiempo, fue asesor del Comité para la Revisión del Manual de Instrucciones al Jurado de Puerto Rico adscrito al Secretariado de la Conferencia Judicial.

## Derecho Penal Sustantivo

La teoría de la responsabilidad penal que sirve de base al Nuevo Código Penal es totalmente distinta a la que inspiró el Código Penal de 1974. A consecuencia de ello, bajo el Nuevo Código Penal es posible aducir una multiplicidad de planteamientos que bajo el Código Penal de 1974 no podían defenderse con seriedad. Ahora, por ejemplo, puede argumentarse que quien no contribuyó de forma significativa a la comisión del delito debe ser castigado mucho menos severamente que los verdaderos "autores" de la ofensa (Arts. 43-45 del Nuevo Código Penal). Esto era insostenible bajo la normativa sobre coautoría que se había adoptado en el viejo código (Art. 35 del Código Penal 1974).

Además, conforme al Artículo 9 del Nuevo Código Penal, el principio de favorabilidad ahora claramente aplica también hasta en los casos en que el convicto está cumpliendo su sentencia. Ello era, cuanto menos, dudoso bajo el anterior código. La figura de la tentativa también sufrió cambios.

Ahora solamente pueden hallarse incurso en tentativa quienes ejecutan el último acto necesario para consumar el delito. Según el viejo código, esto no era un elemento esencial de la tentativa.

De otra parte, a tenor con el Artículo 13 del Nuevo Código Penal, ya no rige en Puerto Rico la doctrina de "interpretación restrictiva" de los estatutos penales. Ahora, distinto a lo que ocurría bajo la normativa desarrollada por el Tribunal Supremo en cuanto a este particular, las leyes criminales pueden interpretarse tanto restrictiva como extensivamente. La única interpretación prohibida es la "analógica" en virtud de la cual se crean judicialmente nuevos delitos o penas.

Para entender cabalmente estos y el resto de los cambios sustanciales que ha sufrido nuestro ordenamiento penal como consecuencia del Nuevo Código, es necesario realizar un análisis comparado de los preceptos contenidos en dicho código. Sólo así puede comprenderse el alcance de las nuevas doctrinas que han sido incorporadas al derecho penal puertorriqueño por medio de este nuevo intento codificatorio. Precisamente ese es el propósito de esta obra.

El análisis que hacemos de la materia equipará al estudiante y al profesional con los conocimientos necesarios para poder sacarle el máximo provecho al Nuevo Código Penal.

Incluimos, además, el texto completo del Nuevo Código Penal con Anotaciones del Lic. Chiesa en relación con la Jurisprudencia Interpretativa del Tribunal Supremo y las enmiendas legislativas que ha sufrido dicho Código. También, se incluye sin costo alguno un DVD que contiene sobre 4,500 págs. de los documentos del historial legislativo del Nuevo Código Penal, que incluyen, entre otros: Los estudios de base, las ponencia de las Vistas Públicas sobre el Código, los Proyectos radicados en el Senado y la Cámara, los Informes de Comisión, el debate y votación final en el Senado y el trámite en la Cámara; el Código Penal y sus enmiendas y las Leyes Complementarias a la Reforma del Código Penal.

## El bosquejo de la obra es el siguiente:

➤ Introducción

- Breve recuento del proceso que culminó con la aprobación del Nuevo Código Penal

- Examen de las bases conceptuales que subyacen al Nuevo Código Penal

➤ Limitaciones Constitucionales al Ejercicio del Poder Punitivo

- Implicaciones del debido proceso de ley para la redacción e interpretación de Leyes penales

- Leyes Ex Post Facto y la Jurisprudencia Reciente Sobre este Particular

- Proporcionalidad y Castigos Crueles e Inusitados

- Separación de Poderes y el Llamado "Delito Administrativo"

- Los Límites al Poder de Criminalizar Conductas que Impone el Debido Proceso Sustantivo y el Derecho a la Intimidad

➤ Limitaciones Estatutarias al Ejercicio del Poder Punitivo

- El Principio de Legalidad y sus Cuatro Consecuencias

- La Eliminación de la Regla de Interpretación Restrictiva

- El Problema de las Fuentes del Derecho Penal y la Limitada Aplicabilidad del Principio de Legalidad en Puerto Rico

- El Más Robusto Principio de Favorabilidad del Nuevo Código Penal

  » Los Problemas de la "Tercera Ley"

  » Las Leyes Intermedias

  » Las Leyes Temporales como Excepción a Este Principio (Art. 10 del Nuevo Código Penal)

- El Concurso de Leyes y Delitos

  » Concurso Real

  » Concurso Ideal y Medial

  » Concurso Aparente

  » Delito Continuado

  » Delito Masa – ¿Aplica a Puerto Rico?

➤ El Primer Eslabón de la Teoría de la Responsabilidad Penal - El Comportamiento Humano

- Acciones Penalmente Relevantes

- Omisiones Penalmente Relevantes

- La llamada Comisión por Omisión (Art. 19 del Nuevo Código Penal)

- La Posesión como Comportamiento

- Casos Límite – Hipnosis, Sonambulismo, Eutanasia

➤ El Segundo Eslabón de la Teoría de la Responsabilidad Penal – La Antijuricidad

- Elementos Objetivos de la Ofensa

- Causalidad y la Nueva Figura de "Imputación objetiva" y "riesgo permitido" (Art. 25).

- Elementos Subjetivos – Dolo Eventual v. "Temeridad" o "Recklessness".

- Los Elementos Subjetivos Distintos a la Intención y su Relación con la Eximente de Intoxicación Voluntaria

- El Error de Tipo del Art. 19 como una Forma de Excluir la Intención

- Las Defensas de Justificación en Puerto Rico – La Nueva y Más Restrictiva Defensa de Estado de Necesidad

➤ El Tercer Eslabón de la Teoría de la Responsabilidad Penal en Puerto Rico – La Punibilidad

- El Mayor Alcance de la Eximente de Coacción

- La Nueva Defensa de Temor Insuperable

- Las Defensas No-Exculpatorias y el Entrampamiento

INCLUYE CD QUE CONTIENE SOBRE 4,500 PÁGS. DE LOS DOCUMENTOS DEL HISTORIAL LEGISLATIVO DEL NUEVO CÓDIGO PENAL

Publicaciones JTS presenta dos nuevas obras de Derecho Penal:
Derecho Procesal Penal: Etapa Investigativa y Derecho Penal Sustantivo

PO BOX 9024120
SAN JUAN, P.R. 00902-4120
TEL. 721-0200

PRSRT STD
U.S. POSTAGE
PAID
SAN JUAN, P.R.
PERMIT NO. 1176

P.O. Box 9024120
San Juan, P.R. 00902-4120
Tel. 721-0200 Fax. 721-0205
www.pub-jts.com

Sres: Favor enviarme un ejemplar de su nuevo libro:                    Fecha_____

___ Derecho Procesal Penal: Etapa Investigativa (Prof. Chiesa) - $100.00 + $3.50 S/H = $103.50
___ Derecho Penal Sustantivo (Lic. L. E. Chiesa) - $100.00 + $3.50 S/H = $103.50
___ Ambos libros (un ahorro de $50.00) - $150.00 + $6.00 S/H = $156.00

Envíese a Ldo(a)._____
Dirección_____
_____ Zip Code_____
Tel:_____ Fax_____ E-mail_____

Forma de pago: ___ Adjunto cheque por $_____ pagadero a Publicaciones JTS.
___ Cárguese el importe de esta orden ($_____) a mi tarjeta de crédito: ___AX ___MC ___VISA
Núm. de tarjeta_____ Fecha exp._____ Firma_____

Autorizo a Publicaciones JTS a renovar automáticamente estas suscripciones a su aniversario (12 meses calendario).
De no desear la renovación enviaré cancelación escrita a Publicaciones JTS.

*v. Estancias de Yauco*, res. el 30 de septiembre de 2003, **2003 JTS 150**, 160 D.P.R. 409 (2003).

Asimismo, el quinto error, sobre supuestas comunicaciones *ex parte* de la AP con NJS, aparte de ser especulativo, pierde también de perspectiva la Recurrente que las adjudicaciones de subastas revisten informalidad, por lo cual no veda ciertas comunicaciones. Véase *Cotto v. Departamento de Educación*, 138 D. P.R. 658 (1995); 3 L.P.R.A. Sec. 2169. Más aún, el propio Reglamento de la AP le permite a la Junta se comunique con los licitadores si estima que es necesario obtener alguna información adicional, claro está, dentro de un marco de razonabilidad y, sobre todo, de prudencia. Véase Artículo XXIV (4) del Reglamento, Apéndice de la Recurrida, página 947.

En lo que concierne a los errores del segundo al cuarto, basta con reiterar que la AP por vía de su Junta es la que en idónea posición se halla para evaluar quién de los licitadores no sólo ofreció el precio más bajo, sino que cumplió con las especificaciones de la invitación a subasta del 31 de julio de 2006. Apéndice, página 26. Aunque existe un señalamiento de la Recurrente acerca de deficientes referencias contra NJS, la AP reitera que la corroboración con otras agencias fue positiva. Como bien afirma la JAS, la libre competencia permite que una empresa que en el pasado no tuvo buenas referencias, ahora sí las tenga, y más si satisface el resto de las especificaciones de una subasta. Apéndice, páginas 6-7.

No nos podemos inmiscuir en el proceso de evaluación que cotidianamente llevan a cabo las agencias para considerar a quién favorecen o no en la adjudicación de una subasta. Salvo contadas excepciones, en que el récord refleje una irregularidad, ilegalidad, capricho, arbitrariedad o abuso de discreción en el proceder de los foros administrativos, nos veremos vedados a intervenir con los mismos. *Pacheco Torres v. Estancias de Yauco*, supra; *Costa, Piovanetti v. Caguas Expressway Motors, Inc.*, 149 D.P.R. 881 (1999).

Sencillamente, la Recurrente no ha logrado evidenciar que la AP se desvió del criterio rector de razonabilidad al ejercer su juicio discrecional y adjudicar la subasta a NJS. No hay prueba alguna en el expediente que derrote la presunción de corrección y regularidad que le asiste a la AP. *Pacheco Torres v. Estancias de Yauco*, supra. Recordemos que es a la Junta la que compete evaluar la totalidad de las circunstancias y condiciones de cada uno de los licitadores, antes de adjudicar una subasta, y para ello goza de una amplia discreción enmarcada dentro de la LPAU, su Reglamento y doctrina aplicable. *Polanco López v. Cacique Motors, supra; O.E.G. v. Rodríguez y Otros, supra.*

A la luz de todo lo anteriormente expresado, procede confirmar la adjudicación de subasta hecha por la AP. En consecuencia de ello, dejamos sin efecto la paralización de los procedimientos, así como la orden de comparecencia al Procurador.

### III
Al amparo de los antecedentes fundamentos, confirmamos la adjudicación de la subasta.

Notifíquese de inmediato por facsímil o teléfono y correo ordinario a todas las partes.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones