# 2008 DTA 112

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL IV**

GRUPO SUMAZA
Recurrente

v.

AUTORIDAD DE CARRETERAS Y TRANSPORTACION DE PUERTO RICO
Recurrida

v.

WALL & BUILDING CORPORATION; GRUPO DE DESARROLLO LOS ALTOS; MUÑOZ HOLDING, INC.; NEVA DEVELOPMENT GROUP
Partes con interés

Núm. KLRA-2007-00974

San Juan, Puerto Rico, a 15 de septiembre de 2008

Panel integrado por su Presidente, el Juez López Feliciano,
la Juez Pabón Charneco y el Juez Hernández Serrano

López Feliciano, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El recurrente Grupo Sumaza (Sumaza) comparece ante este Tribunal de Apelaciones solicitando que revoquemos una determinación emitida el 30 de mayo de 2007 por la Autoridad de Carreteras y Transportación (ACT). Mediante la misma, la ACT adjudicó la Subasta Formal P-06-12 a favor del Grupo de Desarrollo Los Altos (Los Altos).

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida.

**I**

Veamos los antecedentes fácticos pertinentes al recurso:

*"La ACT publicó un anuncio manifestando que emitiría un "Request for Qualifications and Proposals" (RFP) para la construcción de un proyecto de desarrollo de uso mixto de alta densidad, dirigido al transporte colectivo, que sería construido aledaño a la Estación del Tren Urbano de Cupey en San Juan,*

*Puerto Rico.* "

El referido proyecto consistiría de lo siguiente: 1) en la parcela A, el desarrollador designado habría de construir un edificio de primera clase para albergar las nuevas oficinas centrales del Departamento de Educación de Puerto Rico, que contaría además con espacios para tiendas en los niveles inferiores; 2) también en la Parcela A, el desarrollador designado habría de construir un edificio de estacionamiento techado para el uso combinado del edificio con un "*park-and-ride*" para usuarios del Tren Urbano; y 3) en la Parcela B, el desarrollador designado habría de construir un tercer edificio, que debía incluir componentes residenciales y de comercio.

El 16 de enero de 2006, la ACT inició el proceso de subasta mediante la entrega de los documentos relacionados a la misma. Entre estos, se encontraba el RFP que detallaba los requisitos y especificaciones que debían cumplir los licitadores al presentar sus propuestas. [1]

Los días 13 de febrero y 3 de abril de 2006, la ACT celebró varias conferencias pre-subasta. Posterior a éstas, la ACT emitió varios *addendums*. [2]

En respuesta al RFP, Los Altos, Sumaza, NEVA Development Group (NEVA), Wall & Building Corporation (Wall) y Muñoz Holdings, Inc. (Muñoz) presentaron sus declaraciones de calificaciones y posteriormente, sus propuestas.

A tenor con los criterios establecidos en el RFP, la ACT determinó que los mencionados licitadores estaban cualificados para presentar propuestas de desarrollo, por lo que procedió a llevar a cabo la evaluación de las mismas. Una vez evaluadas, la ACT determinó que tanto Los Altos, Sumaza, Neva, como Wall y Muñoz habían presentado propuestas consistentes, en mayor o menor medida, con los propósitos de la subasta y las guías de diseño. [3] En consecuencia, la ACT resolvió invitarlos a todos a reunirse por separado con el Comité Técnico de la Junta de Subastas para explicar sus propuestas. [4]

Posteriormente, la ACT llevó a cabo una evaluación detallada y minuciosa de las propuestas de desarrollo conjunto, emitiendo así un informe.

Determinó que, aun cuando todos estaban cualificados para llevar a cabo el proyecto propuesto, sólo cuatro de los licitadores, entiéndase Los Altos, NEVA, Sumaza y Wall, estaban dentro de los límites competitivos, por lo que resolvió excluir a Muñoz.

Posteriormente, Los Altos, NEVA, Sumaza y Wall fueron invitados a presentar su "*best and final offer*" (BAFO). Recibidas las BAFO, la ACT emitió un último *addendum* por medio del cual se le hicieron varias preguntas adicionales a los licitadores. Estos sometieron sus respuestas oportunamente.

Finalmente, a base de los criterios de evaluación, las entrevistas con los desarrolladores, las propuestas finales, así como las distintas aclaraciones sometidas por los licitadores, la ACT llevó a cabo una evaluación final de las propuestas, concluyendo que la propuesta de Los Altos servía mejor al interés público, razón por la cual se le adjudicó la subasta mediante la determinación del 30 mayo de 2007.

Inconforme, el 11 de junio de 2007, Sumaza presentó un escrito de reconsideración, mediante el cual solicitó se dejara sin efecto la adjudicación de la referida subasta.

Ese mismo día, Wall presentó una solicitud de revisión judicial ante este Tribunal, requiriendo que se dejase sin efecto la adjudicación hecha por la ACT. Se presentó, además, una moción en auxilio de nuestra jurisdicción, solicitando la paralización de los procedimientos. [5]

El 13 de junio de 2007, este Tribunal de Apelaciones emitió una Resolución mediante la cual ordenó la paralización de los procedimientos para el otorgamiento del contrato basado en la Solicitud de Propuestas Núm. P-06-13. [6]

El 14 de junio de 2007, la ACT indicó que la referida resolución no le privaba de jurisdicción para atender la moción de reconsideración, por lo que determinó acoger y considerar la misma.

Transcurridos 90 días desde la presentación de la moción de reconsideración, sin que la ACT hubiera tomado determinación alguna, Sumaza acudió a este Tribunal en revisión judicial mediante el presente recurso. Posteriormente, el 17 de septiembre de 2007, la ACT declaró sin lugar la referida moción de reconsideración.

Así el trámite, el 9 de noviembre de 2007, Sumaza presentó una "*Moción en Solicitud de Orden de Paralización en Auxilio de Jurisdicción*".

De esta manera, en Resolución emitida el 16 de noviembre de 2007 ordenamos provisionalmente la paralización de todos los procedimientos relacionados con la subasta. Asimismo, concedimos término a la ACT y a las partes con interés para que presentaran sus respectivos alegatos en apoyo de su posición.

Oportunamente presentaron sus escritos la ACT, Wall y Los Altos.

## II

Sumaza señala que la ACT cometió los siguientes errores al emitir su dictamen:

"*Erró la Autoridad al adjudicar la Subasta a un licitador, Los Altos, cuya propuesta incumplió crasamente con los requisitos y las especificaciones establecidas en el RFQ/P.*

*Erró la Autoridad al omitir descartar del proceso de subasta a aquellos licitadores que dejaron de someter una propuesta responsiva que cumpliera con todos los requisitos y las especificaciones contenidas en el RFQ/P.*

*Erró la Autoridad al no adjudicar la propuesta a Grupo Sumaza, que fue el único proponente que cumplió cabalmente con los requisitos y las especificaciones de la Subasta, ofreciendo a su vez la propuesta más ventajosa para la Autoridad.*"

En síntesis, lo que debemos resolver es si la ACT incidió al adjudicarle la Subasta Formal P-06-12 a Los Altos.

## III

Procede que expongamos a continuación la normativa aplicable a las cuestiones planteadas por las partes.

## A

Nuestro Tribunal Supremo ha sostenido que la buena y sana administración de un gobierno "*implica llevar a cabo sus funciones como compradores con eficiencia, honestidad y corrección para proteger los intereses y dineros del pueblo al cual dicho gobierno representa*". *Empresas Toledo, Inc. v. Junta,* 168 D.P.R. ___ (2006), **2006 J.T.S. 147**; *A.E.E. v. Maxon,* 163 D.P.R. 434 (2004); *RBR Const., S.E. v. A.C.,* 149 D.P.R. 836, 848 (1999); *Már-Mol, Co. v. Adm. Servicios Gens.,* 126 D.P.R. 864, 871 (1990). El objetivo fundamental de la subasta es, precisamente, proteger al erario consiguiendo la construcción de obras públicas y la adquisición de servicios de calidad para el gobierno al mejor precio posible. *Empresas Toledo, Inc. v. Junta, supra; A.E.E. v. Maxon Eng. Servs., Inc., supra; RBR Const., S.E. v. A.C., supra,* págs. 848-849.

Por esto, el propósito de la legislación que regula la realización de obras y la contratación de servicios para el Gobierno y los sistemas de subastas gubernamentales es proteger la competencia para lograr los precios más bajos posibles, evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgar los contratos y minimizar los riesgos de incumplimiento. *Empresas Toledo, Inc. v. Junta, supra; A.E. E. v. Maxon Eng. Servs., Inc., supra; RBR Const., S.E. v. A.C., supra,* pág. 849; *Már-Mol, Co. v. Adm. Servicios Gens., supra; Cancel v. Municipio de San Juan,* 101 D.P.R. 296, 300 (1973); *Justiniano v. E.L.A.,* 100 D.P.R. 334, 338 (1971). Por lo tanto, los tribunales tenemos el deber de asegurarnos que las instrumentalidades públicas cumplan con la ley, con sus propios procedimientos y que traten de forma justa a los licitadores al momento de adjudicar una subasta. *RBR Const., S.E. v. A.C., supra,* pág. 856.

No obstante, además del costo o precio existen otros factores o criterios de igual importancia a considerar al adjudicar una subasta, entre los que se encuentran los siguientes: que las propuestas cumplan las especificaciones de la subasta; la habilidad del postor para realizar y para cumplir con el contrato; la responsabilidad económica del licitador, su reputación e integridad comercial, entre otros. *Continental Constr. Corp. v. Municipio de Bayamón,* 115 D.P.R. 559 (1984). Ningún postor tiene derecho a quejarse cuando otra oferta se acepta, bajo el fundamento de ser la más ventajosa, si dicha determinación se ha hecho a base del interés público. *Great Am. Indemnity Co. v. Gobierno de la Capital,* 59 D.P.R. 911 (1942).

Los tribunales, en su función revisora, tenemos el deber de examinar que en los procesos de subastas del Gobierno no resulte adversamente afectado el erario público o se menoscabe el esquema de ley que persigue asegurar la integridad de las subastas públicas. *Cotto Guadalupe v. Depto. de Educación,* 138 D.P.R. 658 (1995).

Nuestro Tribunal Supremo también ha enunciado que en procedimientos administrativos informales, como lo es la adjudicación de una subasta, la agencia debe exponer las bases sobre las que descansa su decisión final, de forma que pueda ejercerse efectivamente el derecho a revisión judicial. Aunque, de ordinario, no se exigen determinaciones de hechos y de derecho en la adjudicación de procedimientos informales, como son las subastas, deben mediar razones suficientes que pongan en conocimiento a las partes y al tribunal de los fundamentos que propiciaron la decisión. *Pta. Arenas Concrete, Inc. v. J. Subastas,* 153 D.P.R. 733, 735 (2001); *L.P.C. & D. Inc. v. Autoridad de Carreteras,* 149 D.P.R. 869, 878 (1999); *Rivera v. Secretario de Hacienda,* 119 D.P.R. 265 (1987); *Godreau & Co. v. Comisión de Servicio Público,* 71 D.P.R. 649 (1950).

Con excepción de la Sección 3.19 de la LPAU, 3 L.P.R.A. sec. 2169, en nuestra jurisdicción no existe una ley especial que regule los procedimientos de subasta. Por lo tanto, queda a la discreción de cada agencia gubernamental aprobar reglamentación que establezca los procedimientos y las guías que se han de seguir en la celebración de subastas. *L.P.C. & D, Inc. v. Autoridad de Carreteras, supra,* pág. 875.

Sobre este particular, el Tribunal Supremo resolvió recientemente en el caso *Empresas Toledo, Inc. v. Junta, supra,* que, de ordinario, el licitador más bajo debe ser considerado para realizar la obra, siempre y cuando cumpla con los requisitos reglamentarios de la agencia y tenga la capacidad de realizar la obra de forma eficiente. Añadió que el hecho de que un licitador haga la propuesta más baja no obliga al organismo público a adjudicar la subasta a dicho licitador, ya que existen consideraciones de interés público, como la necesidad de obras bien realizadas, que garanticen ganancias y no pérdidas, que hacen que la licitación más baja no resulte ser siempre la más económica. Concluyó nuestro más Alto Foro que la cuestión debe decidirse a la luz del interés público y que ningún postor tiene derecho adquirido en ninguna subasta. *Great Am. Indem. Co. v. Gobierno de la Capital,* 50 D.P.R. 911 (1942).

## B

El requerimiento de propuestas o RFP, es un mecanismo disponible al Estado para adquirir bienes y servicios. Su característica sobresaliente es que admite negociación. Se ha sostenido que el RFP es, ante todo,

un mecanismo de compra negociada. *Trans Ad de Puerto Rico, Inc. v. Junta de Subastas de la Autoridad Metropolitana de Autobuses,* 174 D.P.R. ___ (2008), **2008 J.T.S. ___**; *R & B Power v. E.L.A.,* 170 D.P.R. ___ (2007), **2007 J.T.S. 56**.

En *R & B Power v. E.L.A., supra*, el Tribunal Supremo aclaró las diferencias entre la subasta formal y el proceso de requerimiento de propuestas citando lo siguiente:

*"By definition, ay contract awarded without using sealed bidding procedures is a negotiated contract... [U]nlike sealed bidding negotiation is a 'procedure that includes the receipt of proposals from offerors an opportunity to revise their offers before award of contract.* W.N. Keyes, *Government Contract,* West Publishing Co., Minnesota, 1986, sec. 15.3, pág. 197.

Al comentar sobre esta definición de lo que es un procedimiento para solicitar propuestas señaló el más Alto Foro que *"[d]e lo anterior se desprende con meridiana claridad que el mecanismo de requerimiento de propuestas se destaca por su mayor informalidad y flexibilidad, así como por el grado de discreción que se le confiere a la entidad pública en la consideración de la propuesta recibida, en comparación con la subasta tradicional. Sigue siendo éste, sin embargo, un mecanismo alterno para la adquisición de bienes y servicios en el Gobierno, y como tal, necesariamente, participa de alguna de las características de la subasta formal".* Id.

Aún cuando el RFP se considera un procedimiento más informal que el de subasta, no se le puede negar a quienes participan en la licitación y cuyas propuestas fueron rechazadas, el derecho a cuestionar la decisión de la agencia mediante la revisión judicial de su decisión. Enfatizó el Tribunal Supremo en el anterior citado caso *R & B Power v. E.L.A., supra,* que:

*"Después de todo, este mecanismo alterno a la subasta formal, participa de características adjudicativas de la misma forma que la subasta tradicional. En vista de ello, son de clara aplicación los principios generales establecidos en la Sec. 3.16 de la Ley Núm. 170, supra, 3 L.P.R.A. sec. 2166, que exige que cuando: "la agencia concluye... un procedimiento adjudicativo en un caso particular,... notificara por escrito por correo certificado con acuse de recibo a las partes su determinacion, los fundamentos para la misma y el recurso de revisión disponible".* Id; *Velásquez v. Administración de Terrenos,* **153 D.P.R. 548 (2001)**; *RBR Const.., ante,* pág 854. **Véase además,** *Store v. Richard,* **321 U.S. 288, 304 (1944)**...

## C

En repetidas ocasiones, nuestro Tribunal Supremo ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. *Accumail de P.R. v. Junta,* 170 D.P.R. ___ (2007), **2007 J.T.S 75**; *Municipio de San Juan v. Plaza Las Américas,* 169 D.P.R. ___ (2006), **2006 J.T.S. 164**; *López v. Administración,* 168 D.P.R. ___ (2006), **2006 J.T.S. 146**; *Hernández v. Centro Unido,* 168 D.P.R. ___ (2006), **2006 J.T.S. 140**; *Comisionado de Seguros v. Puerto Rican Insurance Agency,* 168 D.P.R. ___ (2006), **2006 J.T.S. 142**; *Martínez v. Rosado,* 165 D.P.R. ___ (2005), **2005 J.T.S. 132**; *Polanco v. Cacique Motors,* 165 D.P.R. ___ (2005), **2005 J.T.S. 101**; *Otero v. Toyota,* 163 D.P.R. 716 (2005); *Rebollo v. Yiyi Motors,* 161 D.P.R. 69 (2004).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *López v. Administración, supra; Camacho v. A.A.F.E.T.,* 168 D.P.R. ___ (2006), **2006 J.T.S. 97**; *Rebollo v. Yiyi Motors, supra.* Los tribunales no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc.,* 148 D.P.R. 387, 397 (1999).

Las determinaciones de hechos de organismos y agencias *"tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas"*. *Vélez v. A.R.P.E.*, 167 D.P.R. ___ (2006), **2006 J.T.S. 78**; *Camacho v. A.A.F.E.T., supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior*, 120 D.P. R. 194, 210 (1987); *Facultad v. Consejo de Educación Superior*, 133 D.P.R. 521, 532 (1993).

## IV

### A

De umbral, analizaremos el primer error señalado por Sumaza al plantear que la ACT incidió al adjudicarle la referida subasta a Los Altos, alegando que ésta incumplió con varios de los requisitos establecidos en el RFP, a saber: a) no proveyó un estimado completo y real de los cánones de arrendamiento que serían pagados por el potencial inquilino del edificio de oficinas (*"tenant improvements"*); b) que incluyó una sección de oficinas en un área exclusivamente residencial; c) que no cumplió con el mínimo de estacionamientos requeridos para el edificio residencial; y d) que infringió el orden de entrega del edificio de oficinas y el garaje, al no incluirlos en la primera fase del proyecto.

Plantea también Sumaza que la ACT debió descartar del proceso de subasta a aquellos licitadores que dejaron de someter una propuesta responsiva que cumpliera con todos los requisitos y las especificaciones contenidas en el RFP. Finalmente, expresó que erró la ACT al no haberle adjudicado la mencionada subasta, toda vez que fue el único licitador que cumplió cabalmente con los requisitos y las especificaciones requeridas.

La ACT, por su parte, replica que le adjudicó la subasta a Los Altos debido a que, además de haber cumplido con los requisitos mínimos establecidos en el RFP, su propuesta resultó ser la más ventajosa a los intereses del pueblo.

Por otro lado, Wall nos plantea que la propuesta de Los Altos incumplió con las especificaciones contenidas en RFP referentes al edificio de viviendas a construirse en el proyecto, por lo que la misma debió considerarse como no responsiva.

Por último, Los Altos nos señala que, según se evidencia en el expediente administrativo, su propuesta cumplió con todos y cada uno de los requisitos de la ACT. Adujo que en ausencia de fraude, mala fe o abuso de discreción, no se puede intervenir con la determinación de la agencia especializada.

### B

Comencemos por señalar que, en efecto, Los Altos no sometió una propuesta alterna de renta que tomara en cuenta los *"tenant improvements"*. Sin embargo, ni el RFP ni en los posteriores *addendum* se señalaba éste como un requisito *sine qua non* para la adjudicación de la subasta. Más aún, la ACT se reservó el derecho de renunciar a cualquier irregularidad, defecto o incumplimiento en la presentación o en el contenido de las propuestas. [7] Del expediente ante nuestra consideración no se desprende que la ACT haya tomado en consideración dicho requisito al momento de evaluar las propuestas.

De igual manera, Sumaza plantea que Los Altos incumplió con la Sección 1.3.3 del RFP, al proponer oficinas en la parcela B. Ciertamente, en ninguna parte del RFP o en *addendum* alguno se indicó que dicha área no podía incluir un componente *"comercial"*. En dicha sección, si bien indica que se debe incluir un componente residencial en la referida área, no prohíbe que, además, se incluya un componente comercial. [8]

Sumaza también señala que Los Altos proveyó menos espacios de estacionamiento que los requeridos en el RFP para el área residencial. No le asiste razón. En ningún momento se requirió determinado número de estacionamientos para la Parcela B. Sólo se exigió un número particular de estacionamientos para la Parcela A.

Sumaza alega también que Los Altos incumplió con el orden de entrega del edificio de oficinas al no incluirlos en la primera fase del proyecto. Coincidimos con lo expresado por la ACT en su escrito referente a que el RFP no establece que el edificio de oficinas y el garaje deben ser completados antes que cualquier otra fase. El único requisito al respecto indica que el edificio de oficinas y el garaje deben estar incluidos en la primera fase y que el proyecto deberá estar completado en su totalidad dentro de un período de 5 años, a ser contados a partir del cierre. Ciertamente, la propuesta de Los Altos incluye el edificio de oficinas y el garaje en su primera fase. Además, Loa Altos completaría el proyecto en 53 meses, por lo que estaría cumpliendo con todos los requisitos del itinerario y las diferentes fases del proyecto.

Lo cierto es que la ACT, en su carta de adjudicación del 30 de mayo de 2007, junto con el "*Cupey, Parcels A and B: Chronology of the Selection Process*", así como el "*Cupey Station, Parcels A and B: Application of Evaluation Criteria*", incluidos como "*Attachment A*" y "*Attachment B*" respectivamente, detalló las razones y fundamentos en las que se basó para otorgarle la adjudicación de la subasta a Los Altos.

La evidencia sustancial que obra en el expediente administrativo sometido a nuestra consideración nos permite concluir que la ACT cumplió adecuada y razonablemente con las normas legales y reglamentarias que le eran de aplicación al trámite administrativo efectuado. Véase *López v. Administración, supra; Camacho v. A. A.F.E.T., supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra.*

Tratándose de que las determinaciones de los organismos administrativos cuando se fundamentan en una base racional merecen la mayor deferencia judicial, es que procede la confirmación del dictamen recurrido. Véase *Municipio de San Juan v. Plaza Las Américas, supra; López v. Administración, supra; Hernández v. Centro Unido, supra; Comisionado de Seguros v. Puerto Rican Insurance Agency, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Rebollo v. Yiyi Motors, supra; Pacheco v. Estancias,* 160 D.P.R. 409 (2003). Por ser innecesario para la disposición del recurso, no discutiremos los restantes errores señalados.

V

Por los fundamentos antes expuestos, se confirma la determinación recurrida, mediante la cual la Autoridad de Carreteras y Transportación adjudicó la Subasta Formal P-06-12 al Grupo de Desarrollo Los Altos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz<br>Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2008 DTA 112**

**1.** Los requisitos mínimos que debía cumplir cada licitador que aspirara a ser seleccionado para la construcción del proyecto eran los siguientes:

*"a. Submit a Statement of Qualifications and Development Proposal which are timely and responsive to this RFQ/P.;*

*b. Be accepted by the Authority, in its sole discretion based on the review of the Statament of Qualifications, as a Qualified Developer for the Project;*

*c. Commit in its Development Proposal to the Fixed Ground Lease Parameters for Parcel A and the Fixed Land Price for Parcel B, as described in Section 2.2;*

*d. Propose rental costs for the Government Tenants less than or equal to the Maximum Government Rent Parameters described in Section 2.2;*

*e. State clearly any proposed park-and-ride costs to be charged to the Authority; and,*

*f. Provide in its Development Proposal an overall quality and clarity of presentation sufficient to enable the Authority to properly evaluate its contents."*

Además de los requisitos mencionados, la ACT describió ciertos requisitos adicionales que habría de tomar en consideración para determinar finalmente qué propuesta resultaría más ventajosa. Estos son los siguientes:

*"a. Quality and Content of the proponed Development Concept, and its consistency with the Project Goals set forth in Section 1.4 of the RFQ/P and the development and design Guidelines set forth in Section 5.0;*

*b. The Respondent's proposed schedule for commencing and completing the Project;*

*c. The overall business terms contained in the Development Proposal with respect to the Authority and the Government Tenants, including the rent levels to be charged to the Government Tenants and the park-and-ride costs to be charged to the Authority;*

*d. The Respondent's previous experience in successfully completing projects of similar scale and complexity; and*

*e. The Respondent's financial capacity in relation to the requirements of the Project."*

**2.** El Reglamento de Subastas de la ACT, Reglamento Núm. 02-001 de 30 de junio de 1995, define el *addendum* como el suplemento que se emite después de la publicación de un Aviso de Subasta, Aviso de Cualificación, o Aviso de Solicitud de Propuesta y que comprende cambios o adiciones a los planos y especificaciones, condiciones generales o cualquier otro documento relacionado con la subasta. Los *addendum* emitidos fueron los siguientes: el 3 de abril de 2006, se emitió un primer *addendum* que incluía ciertos cambios en las condiciones del negocio. El 10 de mayo de 2006 se emitió un segundo *addendum.* El mismo incluía el precio de compraventa fijado para la parcela B e información sobre la renta actual del Departamento de Educación. El 13 de julio de 2006 se emitió un tercer *addendum,* que incluía los parámetros de precio de renta de la parcela A y cambios en el itinerario del proceso de subasta. Por último, en respuesta a preguntas sometidas por los desarrolladores, se emitió un cuarto *addendum* el 18 de agosto de 2006.

**3.** En adición a lo anterior, todos los licitadores se comprometieron al pago de la renta fija de la Parcela A y al precio mínimo de venta de la Parcela B.

**4.** Esto, a tenor con las secciones C.2 y C.3 del Artículo VIII del Reglamento de Subastas y de la Sección 2.3 del RFP.

**5.** Recurso KLRA-2007-00530.

**6.** Este Tribunal, por medio de su sentencia del 31 de octubre de 2007, dispuso lo siguiente en este caso:

*"Por lo tanto, el recurso de revisión presentado ante nos resulta ser prematuro, puesto que al momento en que fue presentado el término para presentar el mismo no había comenzado a decursar, ya que la agencia recurrida aún no había emitido su decisión final en cuanto a la referida moción de reconsideración. En consecuencia, procede desestimar el recurso por prematuro, en vista de que al momento de presentarse el mismo carecíamos de jurisdicción para atenderlo."*

Más adelante, añadió:

*"Por los fundamentos que anteceden, se desestima el recurso por prematuro. En consecuencia, se deja sin efecto la paralización de los procedimientos."*

**7.** En la Sección 2.6 del RFP, la ACT se reservó el derecho de *"waive any irregularities, defects, or non-compliance in the*

*filing or contents of any Proposal"*. Además, en su Resolución en reconsideración la referida agencia señaló:

*"Más aún, desde el punto de vista sustantivo, la ACT concluyó que la información requerida sobre TI no le proveería información útil para evaluar las propuestas, mayormente por las razones esbozadas por Los Altos. La extensión, calidad, diseño y costo de TI requerido por el Departamento de Educación será determinado por éste una vez se comience a programar el uso de los espacios. Dado que ninguno de los demás proponentes ofrecieron proveer al Departamento de Educación de un subsidio u herramienta similar, la ACT concluyó que el tema de los TI no constituía un factor que afectase la competitividad de las propuestas. De hecho, todos los proponentes sugirieron y plantearon en sus entrevistas su disponibilidad para negociar con el Departamento de Educación todo lo concerniente a los TI una vez el programa de espacio de oficinas fuese determinado finalmente."* (Énfasis suplido). Véase Resolución en Reconsideración, págs. 12-13.

**8.** Específicamente, el RFP estableció que:

*"In particular, the program of uses and the massing envelope described in the following sections are allowed in the C-3 zoning within the TU overlay district. Within these parameters, the Authority invites Respondents to propose creative solutions which they consider most desirable, appropriate, and feasible."* Véase pág. 16 de RFQ/P. Apéndice de Los Altos, pág. 202.

**9.** Al respecto, el RFP estableció:

*"However, given the immediate proximity of the Tren Urbano station, the occupancy of the office building by government agencies, and the presence of several major employers and institutions within easy walking distance, the Authority intends to provide parking in the Garage as follows:*

*. 800 spaces for the Government Tenants or 2.4 spaces per 1,000 square feet.*

*. 400 park-and-ride spaces for Tren Urbano patrons; as noted earlier, the Authority will guarantee the use of these spaces on work days under terms to be negotiated with the Designated Developer.*

*. a maximum of 1 space per 1,000 square feet of retail, since the great majority of destination retail patronage is expected at nights and on weekends.*

*For the residential units, the maximum acceptable parking ratios will be as follows; as noted in Section 5.2.4 above, residential parking may be contained in the Residential Building on a stand-alone basis or integrated into the main Garage:*

*. 2.0 spaces per residential unit of three bedrooms or more.*

*. 1.0 to 1.5 spaces per residential unit of two bedrooms or less (equal to the minimum requirement under zoning for each bedroom count and unit size).*

*. 1 visitor space per 10 residential units".*

Véase pág. 207 del Apéndice de Los Altos.